IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE COMMUNITY CHURCH OF CHESTERLAND OHIO, JESS PEACOCK, MEGAN CARVER, and CONSTANCE BECKER,<br><br>Plaintiffs,<br><br>v.<br><br>AIMENN D. PENNY, CHRIS UTHE, BRANDON PERDUE, SHERRI PERDUE, and UNNAMED MEMBERS OF WHITE LIVES MATTER OHIO<br><br>Defendants. | Civil Action No. 1:24-cv-00642-BMB |

**MEMORANDUM IN SUPPORT OF CHRIS UTHE'S MOTION TO DISMISS**

Defendant, Chris Uthe ("Mr. Uthe" or "Defendant"), by counsel, respectfully submits this memorandum in support of his motion to dismiss Plaintiffs' Complaint (the "Complaint") under Fed. R. Civ. P. 12(b)(6). As grounds therefore, Mr. Uthe states as follows:

**INTRODUCTION**

On July 7, 2016, Micah Xavier Johnson ambushed and murdered five police officers in Dallas Texas, injuring many more, because he was upset about a police shooting involving African Americans.[1] The shooting occurred following a peaceful protest by Black Lives Matter against then-recent alleged police brutality incidents in

---

[1] https://www.nbcdfw.com/news/local/protests-in-dallas-over-alton-sterling-death/88950/ (accessed: June 29, 2024)

1

Minnesota and Louisiana.[2] In the days and months that followed this cowardly attack, members of the public and law enforcement came to learn that, even though the shooter had some affiliation with Black Lives Matter, he acted alone.[3] Today, Micah Xavier Johnson is remembered for what he truly was: A lunatic. No lawsuits were brought by families of the deceased police officers against the movement which shared his political objectives. The reason why is obvious: there was no link between their lawful and protected speech and Johnson's unlawful and unprotected acts of murder and mayhem.

The Plaintiffs in this case have acted far differently. There is no reasonable dispute that Plaintiffs have at least some viable legal claims against Aimenn D. Penny ("Penny"). On March 25, 2023, Penny did in fact trespass onto the property of The Community Church of Chesterland Ohio ("Community Church") and throw Molotov cocktails with the intent of burning the church to the ground. Penny has admitted to this conduct and is currently serving the lengthy prison sentence that he justly deserves. However, Mr. Uthe has never been arrested (let alone charged) by law enforcement with having any role in this act of arson, directly or indirectly. Penny acted alone.

Penny attempted to burn down the church because he disagreed with child-oriented drag events which, although shocking and offensive to many, are acts of speech by Community Church protected by the First Amendment.[4] In filing this

---

[2] https://abcnews.go.com/US/video/dallas-police-shed-light-gunmans-motives-40431927 (accessed: June 29, 2024)
[3] https://www.bbc.com/news/world-us-canada-36752603 (accessed: June 29, 2024)
[4] https://www.justice.gov/opa/pr/ohio-man-sentenced-18-years-prison-firebombing-church-planned-host-drag-show-events (accessed June 29, 2024)

2

lawsuit, Plaintiffs have demonstrated that they have little more respect for Mr. Uthe's First Amendment rights than Penny had for theirs. Their frivolous complaint is an outrageous attempt by politically motivated plaintiffs and their counsel (specifically, the Anti-Defamation League) to chill the First Amendment rights of Defendant and others with similar beliefs. The message it sends is clear: If you are part of a group that engages in wrong-think and expresses it publicly, you put yourself at risk of being sued in federal court as part of the ADL's mission to engage in "lawfare" against dissident groups and chill their speech.[5] As they have failed to plausibly allege any claim against Mr. Uthe, the Court should not permit them to continue this *shanda*.

## STANDARD OF REVIEW

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a Court must construe the complaint in this light most favorable to plaintiff and accept all well-pleaded material allegations as true. *United States ex. rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir.) The sufficiency of a complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this standard is a liberal one, the complaint must still provide the defendant with "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[t]o survive a motion to dismiss, a complaint

---

[5] https://tweettest.adl.org/sites/default/files/pdfs/2022-11/ADL-litigating-against-extremism.pdf (accessed: June 29, 2024) (pgs. 3-4.)

must contain sufficient factual matter, accepted as true, "to state a plausible claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. Where the well-pleaded facts do not permit a court to infer more than the mere possibility of conduct, the complaint has alleged – but it has not "show[n] that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. Where a complainant fails to "nudge [their] claims across the line from conceivable to plausible . . . the complaint must be dismissed. *Id*. at 678; see *Twombly*, 550 U.S. at 570.

Furthermore, the Court in *Twombly* rejected the "just let the case go to discovery and summary judgment" rationale that plaintiffs often invoke in cases such as this one. The Court stated:

> "It is no answer to say that a claim just shy of plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management . . . given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. See, e.g., Easterbrook, Discovery as Abuse, 69 B.U.L. Rev. 635, 638 (1989). (Judges can do little about impositional discovery when parties control the legal claims presented and conduct the discovery themselves). And it is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage, much less lucid instructions to juries; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings. Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a claim."

*Twombly*, 550 U.S. at 559-60.

4

The standards of *Twombly* and *Iqbal* directly apply here. Plaintiff's complaint does three things: (a) Makes a plausible claim for relief against Aimenn D. Penny for the despicable and cowardly arson he committed against Community Church; (b) Makes recitals concerning certain non-criminal and constitutionally protected activities engaged in by Mr. Uthe and other co-defendants; and (c) Ham-handedly claims these constitutionally protected activities were overt acts in furtherance of a conspiracy with Mr. Penny to commit the act of arson. When attempting to show some sort of meeting of the minds among the alleged co-conspirators, the complaint is short on relevant facts and rife with labels, naked assertions, personal attacks and conclusions.

Plaintiff's complaint fails even to plead facts that are "merely consistent" with Mr. Uthe's liability. It fails the plausibility requirement in its entirety. Defendant would be remiss to note that the Plaintiffs are represented by a large international law firm and the Anti-Defamation League. Defendant is indigent and has only the undersigned counsel at his disposal (who is representing him *pro bono)*. This only goes to show that, with the massive, drawn out, and invasive discovery that will undoubtedly be propounded in this litigation, that Plaintiff's true intent is to score an *in terrorem* victory in hopes of chilling the constitutionally protected speech of Mr. Uthe, White Lives Matter of Ohio, and organizations with similarly controversial – yet constitutionally protected – viewpoint. Frankly, this is their only realistic hope of victory given Mr. Uthe's indigence. Further, attempting to establish precedent cheaply in order to use it in more high-profile cases at a later date is an abuse of the legal system and the Plaintiff.

5

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

The complaint sets forth two federal claims against Mr. Uthe under 42 U.S.C. § 1985(3) ("Count I") and 42 U.S.C. § 248(a)(2)-(3) ("Count II") It also sets forth state law claims pursuant to Ohio R.C. § 2307.60(A)(1) and §2307.70(A) ("Count IV") and common law claims of trespass to land ("Count V") and intentional infliction of emotional distress ("Count VI). The claims brought under Count I, Count IV, and Count V relate only to Penny's Molotov cocktail attack on Community Church. Pls.' Compl. ¶ 163 – 164, 181, 187-189. The claims brought under Counts II and VI relate, at least in part, to Mr. Uthe's constitutionally protected speech on matters of public concern. Pls.' Compl. ¶ 167-168, 195 – 196.

All of Plaintiff's claims against Mr. Uthe relating to Penny's criminality fail because Plaintiffs have failed to plausibly allege a conspiracy – which is the only way he could possibly be liable. The Complaint is focused on painting not only Penny, but Mr. Uthe and the other defendants, as horrifically racist people with rights unworthy of protection (assuming Plaintiffs believe they have any rights at all). It wholly fails to demonstrate the existence of a single plan or an intention to engage in a common conspiratorial objective that is tortious or otherwise unlawful. The Complaint *does* show a plan to engage in the "common conspiratorial objective" of appearing in public to demonstrate and comment on matters of public concern. However, it fails to plausibly bridge the gaping chasm between protected speech and arson.

Plaintiff's claims under 42 U.S.C. § 1985(3) also fail because Mr. Uthe is a private citizen, not a state actor, who cannot be subject to an equal protection claim. While §

6

1985(3) may reach private conspiracies, it may only do so in limited circumstances. Plaintiffs ground their § 1985(3) claim to 42 U.S.C. § 1982. The problem with this is simple: Their complaint is based upon religious or anti-LGBTQ+ animus. 42 U.S.C. § 1982 only protects against racial animus. Finally, to the extent that Counts II and VI bring a claim against Mr. Uthe for exercise or threatened exercise of his First Amendment rights, such claims are not cognizable and must be dismissed.

## ARGUMENT

**A.     Plaintiffs Have Failed to Plausibly Allege a Common Plan or Conspiratorial Objective**

When considering the claims brought against Mr. Uthe specifically, the gravamen of each is Penny's act of constructing Molotov cocktails, trespassing onto the property of the church, and using those Molotov cocktails to damage the church's property. Pls.' Comp. ¶ 164-165 (Count I); 169 (Count II), 181- 182 (Count IV) and 187 – 189 (Count V). As it was undisputedly Penny who engaged in these actions and not Mr. Uthe. The only basis Plaintiffs can plead for Mr. Uthe's liability is as a co-conspirator *with respect to this specific act* committed by Penny alone. Pls.' Compl. ¶ 161 – 165 (Count I), 168 (Count II), 183 (Count IV), 186 (Count V).

Plaintiffs do not claim that Mr. Uthe, or any of the other Defendants, were physically present at the time that Community Church was attacked by Penny. They do not allege that Mr. Uthe threw any incendiary devices at or in Community Church. Plaintiffs neither allege that Mr. Uthe provided Penny with materials necessary to commit the arson nor that he aided, instructed, or funded Penny in acquiring or using

7

them. There is no allegation that Mr. Uthe transported Penny to the church or helped him to evade law enforcement after the arson. Plaintiffs' complaint fails even to reference a single point during Penny's criminal proceedings during which any allegations of conspiracy or other criminality were made against Mr. Uthe. Instead, Plaintiffs' complaint claims that Mr. Uthe engaged in the following acts:

1. A December 3, 2022, protest of a "Holi-Drag Storytime" event to be held at a Unitarian Universalist Church and Red Oak Community School. Pls.' Comp. ¶ 73 – 80. The event was allegedly canceled after the defendants in this case announced plans to hold – and did in fact hold - an anti-LGBTQ+ rally on the sidewalk leading to the Unitarian Universalist Church. *Id*.

2. A February 25, 2023, protest of a racial incident that occurred at Kenwood Elementary on February 13, 2023, during which a group of African American students assaulted several white students and forced them to state "Black Lives Matter" against their will.[6] Pls.' Compl. ¶ 88 – 93.

3. A distribution of flyers on March 4, 2023, alerting members of the Wadsworth, Ohio community to the presence of armed terrorists traveling to the community, promoting their own group, and decrying a "child grooming" event called "Rock-n-Roll Humanist Drag Queen Story Hour" that was scheduled for March 11, 2023. Defendant is then alleged to have actually attended the rally in protest of the event, distributed flyers promoting his own views at the event, and

---

[6] https://www.whio.com/news/local/police-give-update-racial-incident-involving-students-springfield-elementary-school/KQB3B3XWPBDVDGQ5IG4NBQRBBQ/ (accessed: June 4, 2024)

engaged in other lawful instances of protected speech in opposition to what Mr. Uthe believes is "child grooming." Pls. Compl. ¶ 94 – 117.

4. The distribution of flyers promoting the White Lives Matter organization at a gun show on March 25, 2023 (the same day that Penny committed his act of arson against Community Church). Pls. Compl. ¶ 118 – 121.

Pleading requirements governing civil conspiracies are relatively strict, and therefore, such claims must be pled with some degree of specificity. *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). The standard for proving a civil conspiracy was set forth in *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985): "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id*. at 943-44.

| Phase 1 | Phase 2 | Phase 3 |
|---|---|---|
| **Protected Speech** | **?** | **Arson** |

Counts I, II, IV, and V of the Complaint must be dismissed because it vacillates on what the plan among Defendants actually was. The Complaint fails to plead facts

showing the existence of a single plan and attempts to bolster a conspiracy to commit an act of arson with allegations concerning a different plan entirely: To promote White Lives Matter Ohio and to participate in entirely lawful political demonstrations opposing homosexuality, gender-affirming medical treatments, and "child grooming." There are no allegations concerning how Mr. Uthe came to have knowledge of a plan to firebomb Community Church or anything he specifically did to assist Penny in carrying out the attack. Instead, it merely pleads at length that all members of White Lives Matter Ohio, including Mr. Uthe, are horrible and racist people whose First Amendment rights are unworthy of protection. Plaintiffs have failed entirely to build even the narrowest of factual bridges which even come close to crossing the gaping chasm between protected speech and arson. The unbridged chasm between these two objectives is so wide as to render the conspiracy claims against Mr. Uthe implausible. Counts I, II, IV, and V against Mr. Uthe must be dismissed.

**B.     42 U.S.C. § 1982 Cannot Be Used as The Basis For a 42 U.S.C. § 1985(3) Claim Based Upon Religious or Anti-LGBTQ+ Animus**

To prove a claim under § 1985(3), a plaintiff must show (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. Plaintiff must also

establish that the conspiracy was motivated by a class-based animus. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).

However, Sec. 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971). The other "class-based animus" language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias. *United Brotherhood of Carpenters &Joiners Local 610 v. Scott*, 463 U.S. 825, 837 (1983). In fact, the Supreme Court has held that "it is a close question whether Sec. 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *Id*. at 836; See also *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) ("we have held that § 1985(3) reaches only conspiracies targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework.").

In *Bray v. Alexandria Women's Health Clinic,* the Supreme Court narrowed the scope of acceptable actions under § 1985(3) holding that it "applies only to such conspiracies as are 'aimed at interfering with rights . . . protected against private, as well as official, encroachment.'. . . There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude . . . and, in the same Thirteenth Amendment context, the right to interstate travel." 506

11

U.S. 263, 278 (1993) (internal citation omitted). In the discussing the type of conspiracy required, the Court also stated:

> ". . . it does not suffice for application of § 1985(3) that a protected right be incidentally affected. A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be "*aimed at*" (emphasis added); its impairment must be a conscious objective of the enterprise. Just as the 'invidiously discriminatory animus' requirement, discussed above, requires that the defendant have taken his action 'at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group' . . . so also the 'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it: He must act at least in part for the very purpose of producing it."

*Id*. at 275 – 76. See also *Gerber v. Herskovitz*, 14 F.4th 500, 511 (6th Cir. 2021) (rejecting a § 1985(3) claim against those protesting against a church and suggesting that interstate travel may be a prerequisite before the statute applies).

These Plaintiffs cannot assert an equal protection claim under § 1985(3) because none of the defendants are state actors. *United Brotherhood of Carpenters &Joiners Local 610,* 463 U.S. at 831 – 832. The equal protection guaranteed by the Fourteenth Amendment erects no shield against merely private conduct, however discriminatory or wrongful. *United States v. Morrison,* 529 U.S. 598, 621 (2000) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). They cannot use their First Amendment right to practice their "religion" as the basis for a claim under the Ku Klux Klan Act because, while the First Amendment protects against official encroachment, it does not protect against private action. *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 566 (1995); *Tilton v. Richardson*, 6 F.3d 683, 686 (6th Cir. 1993) (a § 1985(3) conspiracy must be aimed at interfering with rights protected against private, as well as official,

12

encroachment). Thus, Plaintiffs have used 42 U.S.C. § 1982 as the only possible basis for their action under 42 U.S.C. § 1985(3). Pls' Compl. ¶ 161.

42 U.S.C. § 1982, geared toward interference with property rights, is in fact a right guaranteed against private as well as official encroachment. However, 42 U.S.C. § 1982 has been construed only to prohibit official and private *racially* discriminatory inference with property rights. *Shaare Tefila Congregation v. Cobb*. 481 U.S. 615, 616-617 (1987). It does not apply to discrimination on the basis of religious identity, beliefs, or observances. *Jones v. Alfred H. Mayer Company*, 392 U.S. 409, 413 (1968) ("the statute in this case [Sec. 1982] deals only with racial discrimination and does not address itself to discrimination on the grounds of religion or national origin."); See also *Lubavitch-Chabad of Ill., Inc. v. Nw. Univ.*, 772 F.3d 443 (7th Cir. 2014). While the Plaintiffs have gone to great lengths to portray all Defendants as racist, they have failed to allege a conspiracy based upon racial animus. Instead, they allege that the conspiracy was either motivated by animus toward the LGBTQ+ community or animus toward a religion that considers transgenderism or child-oriented drag shows as being among its sacraments. This is factually and legally insufficient: Plaintiffs' claims under 42 U.S.C. § 1985(3) must be dismissed.

**C.    Plaintiffs Claims under the FACE Act and for Intentional Infliction of Emotional Distress Must Be Dismissed to the Extent That They Claim Damages Based Upon Mr. Uthe's Engagement in Constitutionally Protected Speech**

The first paragraph of the complaint states that this lawsuit is "a civil rights action arising from Defendants' conspiracy to violate and deprive Plaintiff Community

13

Church of its property *and* to interfere with the individual Plaintiffs' lawful exercise of their First Amendment right to religious freedom at a place of religious worship" (emphasis added). Mr. Uthe does not challenge Plaintiffs' claims against Penny as there is no doubt that he was responsible for damaging Community Church's property. However, Mr. Uthe challenges Plaintiffs' claims against him to the extent that they allege a nonexistent conspiracy which has not been plausibly plead. To the extent that Plaintiff's claims under the FACE Act (Count II) and for intentional infliction of emotional distress allege also allege claims against Mr. Uthe for his exercise of his rights under the First Amendment, those claims are challenged on that basis as well. Mr. Uthe specifically references:

1. "Defendants entered into a civil conspiracy by forming an agreement to participate in intentional acts of violence in furtherance of their mutual goal of harming, intimidating destroying, depriving, and violating the property of Plaintiffs because of their religious beliefs and practices." Pls' Compl. ¶ 168
2. "threatening to appear outside of Community Church's Drag Storytime event . . ." Pls.' Compl. ¶ 195.
3. "threatening to rally against Community Church's Drag Storytime event . . . so that Community Church would cancel the Drag Storytime event." Pls. Compl. ¶ 196.

This relatively tangential aspect of this case is similar in nature to *Gerber v. Herskovitz*, where the Sixth Circuit rejected claims by congregants of Beth Israel Synagogue against

14

protesters who would regularly appear in front of the synagogue and across the street from it at times coinciding with worship services. 14 F.4th 500, 504 (6th Cir. 2021). In that case, the protesters were armed with signs containing slogans such as "Resist Jewish Power" and "Jewish Power Corrupts". *Id*. The protestors did not apply for or obtain permits to engage in such activities and congregants of the synagogue claimed that these signs inflicted "severe emotional distress." *Id*.

The First Amendment principle that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content applies in full force in a traditional public forum. *Id*. at 509 (quoting *McCullen v. Coakley*, 573 U.S. 464, 476-77 (2014)). While Community Church certainly has the right to prohibit demonstrators from entering church property, it has no right to prohibit them from demonstrating on traditional public fora – such as sidewalks – outside of its events. *Id*. Speech "at a public place on a matter of public concern . . . is entitled to 'special protection' under the First Amendment and cannot be restricted simply because it is upsetting or arouses contempt." *Snyder v. Phelps*, 562 U.S 443, 458 (2011). It is typically the minority view – including the type of speech specifically referenced in Plaintiffs' complaint – that most often needs protection under the First Amendment. *Gerber*, 14 F.4th at 509 (quoting *Bible Believers v. Wayne County*, 805 F.3d 228, 243 (6th Cir. 2015)).

The First Amendment shields Mr. Uthe from tort liability in this case for the same reason that Westboro Baptist Church was shielded from tort liability in *Snyder*. Any statements attributable to Mr. Uthe "to appear outside" or "rally against" Community Church's Drag Storytime event were nothing more than threats to engage

15

in lawful activities entitled to absolute protection under the First Amendment. Plaintiffs have no cognizable claim against Mr. Uthe for activities of that nature and, to the extent the Complaint seeks recovery for the same, it must be dismissed.

## PRAYER

Wherefore, premises considered, Mr. Uthe prays that this Honorable Court enter an order dismissing all of Plaintiff's claims against him with prejudice to refiling pursuant to Fed. R. Civ. P. 12(b)(6). Alternatively, Mr. Uthe prays that this Honorable Court order Plaintiffs to replead and allege a plausible claim against Mr. Uthe.

Date:  July 11, 2024

        Respectfully submitted,

        **MAGANA & VAN DYKE, PLLC**

        /s/ Jason Lee Van Dyke
        Jason Lee Van Dyke
        State Bar No. 24057426
        1417 E. McKinney Street, #110
        Denton, TX 76209
        P – (940) 382-1976
        F – (469) 453-3031
        Email:  jason@maganavandyke.com

        Attorney for Chris Uthe

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2024, a true and accurate copy of the foregoing were served via ECF procedures of this Court to all counsel of record.

        /s/ Jason Lee Van Dyke
        JASON LEE VAN DYKE