IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

- - - - -

COMMUNITY CHURCH of CHESTERLAND, )
OHIO                              )
                                  )
            Plaintiff,            ) Case No. 1:24CV642
                                  )
        vs.                       )
                                  )
AIMENN D. PENNY, et al.,          )
                                  )
            Defendant.            )

- - - - -

TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE HONORABLE

JUDGE BRIDGET MEEHAN BRENNAN, JUDGE OF SAID COURT,

ON WEDNESDAY, AUGUST 7th, 2024,

COMMENCING AT 12:00 O'CLOCK A.M.

- - - - -

Court Reporter:            GEORGE J. STAIDUHAR
                           801 W. SUPERIOR AVE.,
                           SUITE 7-184
                           CLEVELAND, OHIO 44113
                           (216) 357-7128

- - - - -

1    APPEARANCES:

2        On behalf of the Plaintiff:

3
         JONES DAY - Cleveland
4        BY:   JUSTIN E. HERDMAN, ESQ.
               MICHAEL S. QUINLAN, ESQ.
5        901 Lakeside Avenue
         Cleveland, OH 44114
6

7        On behalf of Defendant Chris Uthe:

8        MAGANA & VAN DYKE
         BY:   JASON L. VAN DYKE, ESQ.
9        Ste. 110
         1417 East McKinney Street
10       Denton, TX 76210

11

12       On behalf of Defendants Brandon and
         Sherri Perdue:
13

14       LAW OFFICE OF GARY W. SALTERS - Columbus
         BY:   GARY W. SALTERS, ESQ.
15       Ste. 200
         175 South Third Street
16       Columbus, OH 43215

17                  - - - - -

18

19

20

21

22

23

24

25

P R O C E E D I N G S

THE COURT:  Good afternoon, everyone.  I apologize for the delay.  We were having some technical difficulties.

First and foremost, Mr. Uthe, can you hear us?

MR. UTHE:  Yes.

THE COURT:  Thank you.  We are here now in the matter of Community Church of Chesterland, et al. versus Aimenn Penny, et al.  The Case No. is 1:24CV642.

Who is appearing on behalf of the Plaintiffs?

MR. HERDMAN:  Justin Herdman from Jones Day and Michael Quinlan from Jones Day on behalf of the Plaintiffs.

THE COURT:  Thank you.  And Mr. Van Dyke, you are present?

MR. VAN DYKE:  I am, your Honor.

THE COURT:  All right.  And Mr. Salters, you are as well.

MR. SALTERS:  I am, your Honor.  Thank you.

THE COURT:  And Mr. Uthe, you can hear us, correct?

MR. UTHE:  Yes.  It is Uthe.

1          THE COURT:  Uthe.  Oh, thank you.

2          MR. UTHE:  Yeah.

3          THE COURT:  Thank you.  I apologize for the

4    mispronunciation and want to make sure that our court

5    reporter, George, can hear us.

6          George, can you hear all of us?

7          COURT REPORTER:  All of you.  Yes, Judge.

8    Go ahead.  All set.  So far so good.  Great.

9          THE COURT:  Thank you, George.

10          If at any time anyone loses audio, you know,

11    please raise your hand to let us know.  The Court had

12    sent information to Mr. Penny to participate.  It does

13    not appear from the Zoom that he is calling in.

14          So I would just note for the record that the

15    information was, in effect, sent to him.  The choice was

16    his whether or not to participate.

17          As it relates to the purpose of this

18    hearing, I am advising all parties and counsel at this

19    time that this matter is, in fact, closed to the public

20    pursuant to Local Rule 83.7(1) and because the Court has

21    evaluated the consideration stated by the Sixth Circuit

22    in Shane Group and in re: Opiate Litigation.

23          I just want to be sure of one thing:  Chuck,

24    can you be sure the outdoor door is closed?

25          Thank you.

1           At this time -- I know that I had previously

2     denied a request to seal, but given some of the

3     referenced information in Mr. Van Dyke's filing, that

4     being docket No. 18, I wanted to be sure that this

5     hearing provided an appropriate opportunity for the Court

6     to hear what it needs to hear from Mr. Van Dyke in a way

7     that gives the Court the information it needs to make

8     this determination today.

9           With that, if there is a transcript

10    requested at a later date, the procedure for that will be

11    simply this:

12          A timeline will be given to the parties to

13    state that they want any portion of that transcript to be

14    redacted and, if so, the basis, the legal basis for doing

15    that.

16          Obviously, the Court will not be inclined to

17    redact publicly available information, but it would

18    certainly comply with Sixth Circuit guidance in this

19    area.

20          So there will be an opportunity to provide a

21    request for redactions of any transcript to demonstrate

22    essentially whether or not there is even a need to

23    continue sealing a portion of this proceeding, and the

24    Court will evaluate that if the time comes.

25          Do all counsel understand?

1          Mr. Van Dyke?

2          MR. VAN DYKE:  I understand, your Honor.

3          THE COURT:  Mr. Salters?

4          MR. SALTERS:  Yes, your Honor.  Thank you.

5          THE COURT:  Mr. Herdman?

6          MR. HERDMAN:  Yes, your Honor.

7          THE COURT:  Mr. Quinlan?

8          MR. QUINLAN:  Yes, your Honor.

9          THE COURT:  All right.  Are there any

10   objections to state now to the Court's procedure?

11          Mr. Van Dyke?

12          MR. VAN DYKE:  No, your Honor.

13          THE COURT:  Mr. Salters?

14          MR. SALTERS:  No, your Honor.

15          THE COURT:  Mr. Herdman?

16          MR. HERDMAN:  None, your Honor.

17          THE COURT:  Mr. Quinlan?

18          MR. QUINLAN:  No, your Honor.

19          THE COURT:  All right.  With that, by way of

20   background, the complaint in this action was filed April

21   10th of 2024.

22          June 6th of 2024 Mr. Van Dyke filed a notice

23   of appearance on behalf of Mr. Uthe.  Six-14 of 2024 the

24   Clerk's Office -- approximately June 14th of 2024 --

25   Clerk's Office was notified by yet an anonymous person

1    that Mr. Van Dyke had been the subject of disciplinary

2    proceedings.

3              With that notification, the Clerk's Office

4    confirmed Mr. Van Dyke's admission to practice in this

5    District as far back at 2013, although this appears to be

6    the first case in which Mr. Van Dyke has appeared as

7    counsel.

8              On June 17th, the Court issued its order to

9    address compliance in accordance with local rules as it

10   relates to indications of prior disciplinary actions by

11   admitted counsel.

12             That same day Mr. Van Dyke sought the motion

13   for reconsideration and additional relief.  This was

14   granted, in part.  The hearing was, in fact, rescheduled

15   to accommodate Mr. Van Dyke's prior arranged travel, and

16   it was denied in all other respects.

17             June 11th, Mr. Van Dyke timely submitted his

18   filing with the Court, which was then supplemented about

19   a week later.

20             So the Court has a submission from

21   Mr. Van Dyke which has aided in its review of this

22   matter.

23             As stated in the Court's order, today's

24   focus is on whether or not Mr. Van Dyke complied with the

25   local rules, whether any failure to comply can be excused

1    for purposes of this case, and whether his continued

2    representation of Mr. Uthe can be permitted.

3            So Mr. Van Dyke, I am going to ask you a

4    series of questions.  I am not going to ask that you be

5    placed under oath provided that you acknowledge your

6    professional responsibility.  Be candid and truthful with

7    the Court and you commit to providing truthful answers

8    here this afternoon.  Do you?

9            MR. VAN DYKE:  Of course, your Honor.

10           THE COURT:  So in reviewing your submission,

11   I have some follow-up questions for you.

12           I, first of all, want to know all of the

13   courts in which you are admitted.  You gave a list, and

14   it seemed to suggest that there may be others.  So I want

15   to know with respect to state courts, you indicated

16   Texas, Colorado, Georgia, and then also the District of

17   Columbia.

18           Are there any other state courts?

19           MR. VAN DYKE:  No, your Honor.

20           THE COURT:  With respect to federal courts,

21   you indicated the United States Supreme Court, the Fifth,

22   Sixth and Eighth Circuit Courts of Appeals and all --

23   well, though it is essentially in terms of federal

24   appellate courts -- any other courts of appeals?

25           MR. VAN DYKE:  Yes, your Honor.  I am

1    admitted before the United States Court of Appeals for

2    the Armed Forces.

3              THE COURT:  All right.  Thank you.  Is that

4    a general admission, or is there a specific branch of the

5    Armed Forces?

6              MR. VAN DYKE:  It is a general admission,

7    your Honor.

8              Candidly, what happened, I was a young

9    attorney when I applied for admission there.  I sought

10   certificate for it in another attorney's office; thought

11   it was a cool looking certificate, and applied for

12   admission so I could get one.  And that was a long time

13   ago.

14             I have never actually practiced there, but I

15   am admitted there, and I have never filed anything there,

16   but that's where I am admitted.  I believe it is the

17   United States Court of Appeals for the Armed Forces, your

18   Honor.

19             THE COURT:  And are you a member of the

20   Armed Forces, or were you?

21             MR. VAN DYKE:  No, your Honor.

22             THE COURT:  So civilians can serve in that

23   capacity?

24             MR. VAN DYKE:  Yes, they can, your Honor.

25             THE COURT:  All right.  I am not familiar

1    with that, but I will certainly take your word for it.

2                    As it relates to District Courts, you

3    indicated the District of North Dakota, the Eastern

4    District of Michigan, the Northern, Eastern, and Western

5    Districts of Texas; obviously, the Northern District

6    District Ohio.

7                    Anywhere else as a District Court?

8                    MR. VAN DYKE:  No, not currently, your

9    Honor.

10                   THE COURT:  Had there been previously?

11                   MR. VAN DYKE:  Yes.  I was previously

12   admitted to the Southern District of Texas and the

13   District of Colorado.

14                   THE COURT:  All right.  And what happened to

15   those admissions?

16                   MR. VAN DYKE:  With respect to the Southern

17   District of Texas, when the first suspension that I

18   referenced in my submission, the January that was entered

19   by the state bar of Texas on January 28, 2018, when we

20   notified them up there, I was -- I was suspended by that

21   Court.

22                   And I currently do have an application for

23   readmission, which has not been acted upon by the Court

24   yet.  My understanding from conversations with the Clerk

25   is that reinstatements are subject, I believe, of a

1    review every quarter, and that mine will be considered

2    next quarter, whenever that happens to be.

3            I haven't been given any guidance by that,

4    but I filed the documents and paid the fee.  And that's

5    what I was told by the Clerk.

6            And with the District of Colorado there is

7    -- I was not practicing in the District of Colorado.  My

8    admission to Colorado state court and the District Court

9    was because I had a client -- actually is still a client

10   of mine -- that had opened offices in Colorado, and he

11   had representation in Colorado.

12           But I was not -- they were unwilling for me

13   to pay for me to -- they had an annual fee of some sort

14   for Colorado, and so I allowed that one to lapse, but I

15   was not disciplined by that court, and I was admitted to

16   it when the discipline that we are here about today took

17   place.

18           THE COURT:  All right.  Thank you.

19           Well, you indicated in your filing as well

20   that you were admitted to the Sixth Circuit, the Eighth

21   Circuit, and the District of North Dakota all after these

22   disciplinary proceedings.

23           Is that correct.

24           MR. VAN DYKE:  That is, your Honor.

25           THE COURT:  And were you required to

1    disclose these disciplinary proceedings to one or more of

2    them when you were seeking admission?

3                    MR. VAN DYKE:  I don't believe I was

4    required to for the Sixth Circuit or the Eighth Circuit.

5    I believe there was a question if I remember correctly --

6    I don't have the paperwork in front of me -- when I was

7    admitted to the District of North Dakota, there was a

8    question of whether I had been disciplined before, and I

9    answered it in the affirmative, but I was admitted and

10   not asked any follow-up by the Clerk at that point.

11                   THE COURT:  Thank you.  I want to go through

12   these disciplinary actions and also certainly address

13   notice.  The ultimate question is certainly the prompt

14   notice.

15                   So the first disciplinary action was a Texas

16   State matter beginning in or around October 2017,

17   resulted in a final disciplinary judgment on December

18   28th of 2018, correct?

19                   MR. VAN DYKE:  That's correct, your Honor.

20                   THE COURT:  And that was a six-month

21   suspension, but it was all essentially all suspended,

22   correct?

23                   MR. VAN DYKE:  I believe by that you mean I

24   was not actively suspended.  That was a fully probated

25   suspension is what the Court -- just so I can make sure I

1    am answering the Court's question correctly, are you

2    asking whether it was actively served or not?

3              THE COURT:  That is the question.

4              MR. VAN DYKE:  Oh, okay.  That was fully

5    probated, meaning I did not serve any portion of that

6    suspension, your Honor, for the December 28th, 2018,

7    order.

8              THE COURT:  All right.  You represent in

9    your filing that you notified this Court and every other

10   Court in which you were licensed to practice after

11   receiving a copy of the disciplinary notice of this

12   action from your counsel.  So I want to be very clear.

13             You state you provided notice to this

14   Court?

15             MR. VAN DYKE:  Yes.  In fact, my attorney, I

16   contacted him before this proceeding.  He also sent

17   notice to all the courts that I was required to be

18   admitted -- that I was admitted to, and obviously, I

19   don't remember what address I sent it to, but I believe

20   that would have been right after it was entered.

21             Probably based on the holidays this

22   would have occurred in January of 2019 when that was

23   sent out.

24             THE COURT:  Who was this attorney that also

25   sent notice?

```
 1              MR. VAN DYKE:  Well, the attorney that
 2     represented me in that disciplinary proceeding was
 3     Alan Taggart.  He is an attorney in McKinney, Texas.
 4              THE COURT:  He is an attorney, where?  I'm
 5     sorry.  I didn't catch that.
 6              MR. VAN DYKE:  In McKinney, Texas, your
 7     Honor.  That's north -- that's northeast of Dallas.  I
 8     have known Mr. Taggart for the better part of my career.
 9              He was my counsel in that proceeding.
10              THE COURT:  So are you saying that both you
11     and Mr. Taggart sent notice?
12              MR. VAN DYKE:  I sent notice to Mr. Taggart
13     when I talked to him before this hearing today; said that
14     he recalls sending notice as well.
15              THE COURT:  But does he recall sending
16     notice to this specific Court?
17              MR. VAN DYKE:  I -- I didn't ask him
18     specifically.  I said "hey, when you represented me, you
19     got the order because I need notice for today.  You sent
20     it to all courts I am admitted to?"
21              And he said "yes, I sent it to all courts
22     who you were admitted."  I didn't ask specifically the
23     Northern District.  But I know that I sent it because
24     that was the first one, and I do recall sending it to
25     this Court, yes.
```

1          THE COURT:  And you don't -- to whom did you

2   send it?

3          MR. VAN DYKE:  I can't -- I can't truthfully

4   answer that question, your Honor.  This would have been

5   done back in 2019.  All these times where I sent

6   notifications to this Court were sent by first class U.S.

7   mail.

8          I don't have copies of any of the stuff I

9   sent out.  I know that for this specific -- for this

10  specific one, I sent out everything, and only two of the

11  courts I sent anything to, which was -- I'm sorry --

12  three of the courts, only the state courts were

13  interested in reciprocal discipline action.

14          And I sent it to all the Texas courts and

15  everything like that, and I received nothing back from

16  them.  I mean -- and that's the Fifth Circuit, the

17  Supreme Court.  That's why I wasn't really surprised, but

18  I didn't get anything from a lot of the federal courts.

19  It was a fully probated suspension.

20          So I didn't know what their policies were.

21  I sent it by mail to one of the clerk's offices.  I am

22  assuming it might have been Cleveland.  I don't recall

23  off the top of my head which clerk's office I would have

24  mailed that to in January of 2019.  I don't have a copy

25  of the cover letter or anything like that.

1           THE COURT:  Because the Clerk's Office has
2     reviewed its file, and it does not have any record or
3     highlight for you or preview for you.  They don't have
4     any record of any notification of any disciplinary matter
5     from you at all, not in '18, not in '20, not in 2023.  So
6     that is why I am asking these very particular questions.
7           Did Mr. Taggart keep a copy of a letter that
8     he sent on your behalf?
9           MR. VAN DYKE:  No.  He wouldn't have -- his
10    file retention policy is four years.
11          THE COURT:  Okay.  You asked that question?
12          MR. VAN DYKE:  I did.  I asked him if he had
13    a copy.  He said "no, just like most attorneys in Texas,
14    my file retention policy is four years."
15          THE COURT:  All right.  Thank you.  With
16    respect to the second action also in state court, this
17    time is March in or about March of 2018 to final action
18    being issued February 21, 2019, this was a one-year
19    suspension with three months of it actively suspended,
20    correct?
21          MR. VAN DYKE:  That is correct, your Honor.
22          THE COURT:  All right.  And the conduct in
23    this issue or this disciplinary action, the conduct at
24    issue occurred before the first disciplinary action
25    became final?

1          MR. VAN DYKE:  I have got to do some math in

2    my head, your Honor.

3          THE COURT:  I think the first disciplinary

4    action was final in December of '18.

5          MR. VAN DYKE:  Yes, that's correct.  The

6    conduct in this was alleged to have occurred in March of

7    2018 and occurred before the first disciplinary action

8    became final.  That's correct.

9          THE COURT:  And we will get to this in a

10   minute because the third proceeding, again this is also

11   Texas, this time frame, September of '18 with a final

12   entry on May 1st of 2020, correct?

13         MR. VAN DYKE:  That's correct.

14         THE COURT:  And this one, the disciplinary

15   response it appears to have kept increasing.  This was 18

16   months of a suspended license; six months of that an

17   active suspension.

18         Is that correct?

19         MR. VAN DYKE:  That is correct, your Honor.

20         THE COURT:  All right.  You seem to

21   acknowledge that these were not timely sent to the clerk

22   of courts under local rule 83.7, correct?

23         MR. VAN DYKE:  Yes.

24         THE COURT:  And I will state for you, I

25   mean, you indicate -- well, let me first before I get

1    into that, let's get into the Georgia action.

2                    This order was issued in February of 2019 as

3    well, correct?

4                    MR. VAN DYKE:  No, your Honor.  The order --

5    the action in Georgia, the action in Georgia was

6    initiated in February of 2019.  There was not a final

7    order until on or around April 18th of 2023.

8                    That was the only disciplinary action taken

9    by Georgia, and that was a three-year suspension, but it

10   all run -- ran -- I can't -- I have never been able to

11   say this correctly, nunc pro tunc -- to February 29th of

12   2019 because that was the point where knowing this stuff

13   was pending and the Georgia thing that I voluntarily

14   stopped practicing law in Georgia in accordance with

15   their Rules of Professional Conduct.

16                   THE COURT:  All right.  That clarifies the

17   question I had because it seemed as though the Georgia

18   action was resolved, the Georgia disciplinary matter was

19   resolved in '19.

20                   And then you later say that you sent

21   something in April of 2023.  I was not able to account

22   for the difference in time.  So it is the Georgia action

23   was initiated in 2019, but there was no final order until

24   April 2023.

25                   Is that correct?

1          MR. VAN DYKE:  Yeah.  To the best of my

2    recollection, it was initiated in February of 2019, your

3    Honor.  I don't -- I don't remember specifically the

4    date, but I can definitely say on or around April 18th of

5    2023 that a final order was entered, that's correct.

6          THE COURT:  All right.  I will note going

7    back to the obligation under the local rules to provide

8    prompt notice, I do agree with you as you submitted that

9    in this case, given these circumstances that 30 days

10   would be a reasonable amount of time to provide notice.

11          And I appreciate that with respect to the

12   first discipline matter you said Mr. Taggart also

13   provided notice to this Court, correct?

14          MR. VAN DYKE:  That -- that is my

15   understanding, your Honor.  Obviously, I don't have

16   personal knowledge of that.  That's based on my

17   conversation with Mr. Taggart.

18          THE COURT:  And you also inquired of him as

19   to his retention policy and whether or not he, in fact,

20   had a copy of what he sent to the courts that you were

21   admitted to at that time.

22          MR. VAN DYKE:  Yes.  Yes, I did.  His

23   retention policy is four years just like it is with my

24   office.  And the reason for that, your Honor, is so the

25   Court is clear is, in Texas, the statute of limitations

1    for disciplinary actions is four years.

2              So except for IOLTA records, which we have

3    to keep for five years, we keep all other records for

4    four years, and then they are destroyed because we don't

5    want -- a lot of times we have personally identifying

6    information and stuff like that, and it is a liability

7    issue in case we were to have a security breach.

8              THE COURT:  I understand.  Thank you.

9              With respect to the second Texas

10   disciplinary matter, third Texas disciplinary matter, you

11   indicate that you submitted notice to the Court in June

12   of 2022 after being sort of admonished, I guess, is the

13   way to say it by a District Court Judge in Texas.

14              Is that correct?

15              MR. VAN DYKE:  That's not correct, your

16   Honor.  It was not June of 2022.  It would have been June

17   of 2020.

18              THE COURT:  All right.  I misspoke.  I have

19   June of 2020, but that's what prompted you to file a

20   notice, correct?

21              MR. VAN DYKE:  Yeah.  That among other

22   things, your Honor.  It was Judge Kernodle of the Eastern

23   District Texas.  As I explained in my submission, your

24   Honor, after -- I was going through a very rough period

25   of my life after the second disciplinary action.

1          At that point, I didn't really have an

2    intention of practicing law again.  I was going through a

3    lot of mental health issues.  I was getting help for

4    them, and then -- but after the -- after the third one, I

5    was recovering.  Things were changing, and -- and then

6    this issue came up in the Eastern District of Texas

7    because I was personally involved in some litigation

8    there.

9          And I had not notified the Eastern District

10   as I had not notified any of the other clerks of the

11   federal courts I was admitted to, the disciplinary action

12   from February of 2019 nor had I yet notified them of the

13   disciplinary action from May of that year, 2020.

14         And for lack of a better term, Judge

15   Kernodle kind of took me behind the wood shed so to

16   speak.  He wrote a very stern order admonishing me of my

17   obligation to comply.  I took it not just for the

18   original orders but also for any and all reciprocal

19   discipline orders, which had been issued up until that

20   point.  I took Judge Kernodle's order very serious.

21         At that point, what I did was I prepared

22   manila envelopes just like this, and I packaged up all

23   the reciprocal disciplinary orders, all the orders up

24   until that point, including the reciprocal discipline

25   orders that had been entered up until that point.  I put

1     them in the thing.  I addressed them to clerks' offices,

2     and I dropped them off at the post office.

3             Now, if you are asking me if I had copies of

4     those, we missed my file -- we missed my file retention

5     period by several days.  I don't know if I had them.  I

6     know that it is kept offsite.  I could not locate them,

7     but -- and I also know that it was sent by regular U.S.

8     Mail.

9             I remember that specifically because while

10    -- I remember I considered sending them certified mail.

11    The issue was during June of 2020 we were in the middle

12    of the pandemic, and even the post office told me, they

13    said "yeah, if you send these out certified mail, we

14    can't promise that people are going to get them because

15    we are having issues getting signatures."

16            A lot of places were closed.  I don't

17    remember which addresses I had sent them stuff to.

18            THE COURT:  But you were sending them to

19    federal court houses.  So it is not like a residence

20    maybe or somebody is not answering the door.  It is a

21    public building with an obligation to receive and

22    properly disseminate throughout the Court system and

23    individual judges.

24            MR. VAN DYKE:  And I understand that.

25            What I am explaining to the Court, at the

1    time, I did not feel that because of the pandemic that

2    the certified mail, even the lady at the post office even

3    mentioned to me that it was going to potentially be an

4    issue, and so I sent them out regular mail -- I did look

5    at the local rule before today's hearing.  It does look

6    like the local rules contemplate that I can send them out

7    by regular mail.

8              Of course, that creates a problem when we

9    are here today when I recall specifically sending them

10   out and a clerk's office doesn't have a record of it.

11             THE COURT:  Well, I don't know that the

12   local rules create a problem.  The obligation is always

13   on the attorney to provide proof of compliance with any

14   of the requirements under the local rules.

15             So the question really comes down to, did

16   you maintain any copy or any record of notification in

17   June of 2020?

18             MR. VAN DYKE:  I did, but I don't have it

19   anymore because that was literally deleted probably a

20   week before I got the Court's notice.

21             THE COURT:  And what would the record have

22   been?

23             MR. VAN DYKE:  As far as I know, it would

24   have been a copy of a cover letter, probably just a word

25   copy.  I was at my house.  I didn't have a scanner at the

1    time.

2              To the best of my recollection, I haven't

3    looked at this stuff in four years, your Honor.  I

4    probably would have just saved the Word document to my

5    computer, so I would have known exactly what date I sent

6    it out and where I sent it.

7              THE COURT:  Did Mr. Taggart assist in any

8    way with sending additional notices on your behalf like

9    he did for the 2018 action?

10             MR. VAN DYKE:  He did not.

11             THE COURT:  All right.  So with respect to

12   -- you also indicate then that the Georgia discipline,

13   you disclosed that to this Court in or about April of

14   2023.

15             Is that your representation?

16             MR. VAN DYKE:  That one -- yeah, that one

17   was a lot more recent.  So I remember that one -- I

18   remember that one specifically again.  I did not send

19   that out certified mail.  The reason I remember that one

20   specifically was because I got it on April 18th.

21             I was here at this office, and I remember

22   there was an issue with that one with one of the courts

23   that I sent notice to because the Clerk called me up and

24   said, "hey, did you realize that you are already

25   suspended here?"

1          And that was the Western District of Texas,

2    and I said "no, I had no idea."  And that day I had sent

3    them a certified letter asking them why I had not been

4    given any sort of notice on that.

5          THE COURT:  So April 2023 would be within

6    your retention period.

7          MR. VAN DYKE:  Yes, it was.

8          THE COURT:  So what -- you referenced

9    different kinds of documentation you would have to show

10   proof of compliance for 2020 but no longer having them

11   because the four-year window expired.

12          What would you have to show that this was

13   provided to the Court in 2023?

14          MR. VAN DYKE:  I honestly didn't copy

15   anything on that one, your Honor.

16          THE COURT:  Not even a Word file like you

17   referenced before?

18          MR. VAN DYKE:  I can -- I will look it up

19   just to double check because if I kept it -- law license,

20   bar, discipline, no, I -- it says here the Southern

21   District.  I don't see it, your Honor, but to the best of

22   my recollection -- best of my recollection I sent it out.

23          I don't see -- you are correct, I do not see

24   a copy of anything there.  I see a copy of the letter to

25   the Texas courts, but as I said, I remember quite

1    specifically sending it out.

2                    I don't have it, so to the best of my

3    recollection I sent that one out.

4                    THE COURT:  So unlike the Texas courts, you

5    don't have documentation in your file to support it, but

6    you seem to say that you have a very clear recollection.

7    Help me understand why you have a clear recollection of

8    mailing things into Ohio.  You hadn't practiced in Ohio.

9    You hadn't appeared in a case.

10                   MR. VAN DYKE:  Because I also haven't

11   appeared -- I never appeared in a Supreme Court.  I never

12   appeared -- I have appeared once in the Fifth Circuit,

13   and part of the reason I have such a clear recollection

14   of a Texas case is because in the Texas case, what

15   happened was, as the Court knows from this, there was

16   reciproal disciplinary proceedings opened under a federal

17   clause number that can be found in Pacer.

18                   And because I had experienced some issues

19   e-mailing these, I was actually permitted to

20   electronically file those notices in those proceedings so

21   I could ensure that the Court got those in Texas.

22                   For example I would direct the Court's

23   attention to -- I provided a docket sheet for the

24   Northern District of Texas.

25                   THE COURT:  No.  And I appreciate that, I

1    do, and I don't want you to spend time trying to pull it

2    up.

3                    MR. VAN DYKE:  I am just saying though --

4                    THE COURT:  This is Ohio though; this is not

5    Texas.  Right?  So our local rules don't say you have to

6    notify every other Court; our local rules claim you need

7    to notify this Court.

8                    And as I represented, our Clerk of Court has

9    gone through the file and cannot find any notification

10   from you of any action, Texas, Georgia, Colorado,

11   District of Columbia, whatever it is, there is no

12   communication from you about any disciplinary matter

13   whatsoever.  That's the part that is making --

14                   MR. VAN DYKE:  I cannot -- I cannot -- I

15   cannot explain that.  That is -- that is very disturbing

16   to me because with respect to the Georgia one, as I said,

17   the Court's question was how I have such an easy

18   recollection of the Texas ones, but -- and stuff like

19   that -- and like I said, the reason I have got a

20   recollection of those is because with those, there has

21   been an issue, and I have an electronic tracking when I

22   started filing that stuff in Pacer.

23                   Now, I understand that's not what the Court

24   does here, but I assure the Court -- I took Judge

25   Kernodle's order very serious.  I recall sending -- I

1    recall sending -- I recall sending these things out, and

2    I am mortified that it wasn't received.

3          I am concerned at this point as to whether I

4    was sending them to the right address actually.  That's

5    my concern at this point because I am -- if the Court is

6    not seeing this, I am hoping that I didn't make a big

7    mistake and send it to a state court because --

8          THE COURT:  Well, that may very well be.  It

9    may frankly be the only explanation that I could stomach

10   for you because 2018 is preCOVID.  2020 -- okay, COVID.

11   In 2023, COVID had already expired.

12         So it is a bit strange to me that you are

13   representing all of these filings to our Clerk of Courts,

14   and given what I know about the care and attention that

15   is paid in this courthouse to mailings, it seems to me

16   that you did not, in fact, mail them to this courthouse.

17         But I credit what you are saying about your

18   recollection about Mr. Taggart, but I wonder, too, if you

19   sent them frankly to the wrong address.

20         MR. VAN DYKE:  That's -- at this point, your

21   Honor, because before now I didn't know that none of them

22   had been received.  This is the first I have known that

23   none of them had been received, and now, I am very

24   concerned.

25         THE COURT:  All right.  But I don't want to

1    get into the contents of your communications with

2    Mr. Uthe, but have you discussed the purpose of

3    today's hearing and your prior disciplinary matters with

4    him.

5              MR. VAN DYKE:  I have, and he understands

6    them.

7              THE COURT:  Mr. Uthe, you have heard a great

8    deal today.  All of this is very specific of rules of

9    admission and our local rules here in the Northern

10   District of Ohio.  But I just want to be sure that you

11   are aware of what is happening here today, what the

12   Court's inquiry is, and that your counsel has, in fact,

13   communicated his disciplinary history with you.

14             MR. UTHE:  Yeah.  It took me --

15             THE COURT:  That's all you have to say.  You

16   don't have to get into the substance of the

17   communication, just confirming that you are aware of

18   it.

19             MR. UTHE:  Can I ask you why a past

20   disciplinary issue would affect this case?

21             THE COURT:  So a past disciplinary issue

22   where an attorney does not properly comply with the

23   local rules, that they take an oath to comply with, can

24   affect whether or not someone can represent another

25   person in a matter before this Court.  It can also affect

1    whether or not they maintain general admission within

2    this District.

3              MR. UTHE:  I see.  I was just curious.

4              THE COURT:  Absolutely.  Counsel for

5    Plaintiffs, anything -- probably not -- but anything from

6    your perspective?

7              MR. HERDMAN:  I hesitate to add anything,

8    your Honor, but I just wanted to make sure the Court was

9    aware that in that Eastern District of Texas order to

10   which Mr. Van Dyke has referred from June of 2020, there

11   is a footnote in that order that states, quote, "although

12   Mr. Van Dyke's claims to have disclosed to the Court the

13   existence of the February 2019 sanction, the Clerk's

14   Office has no record of receiving that notice."

15             So I just -- just offer that for

16   completeness here; make no other comment with respect to

17   it, but I think it is relevant based on the Court's

18   inquiry.  I want to make sure you are aware of it.

19             THE COURT:  Yes.  Thank you.  I am aware of

20   it, and I was going to mention that -- well, it seems

21   very strange to the Court that there are multiple courts

22   now in which, sir, you are claiming that you provided

23   notice, and the Clerk's Office can't account for such

24   notice, four instances -- three instances in this

25   District, and one in another, at least.

1              And I can't account for any district that

2       may not have received their notice and is unaware of what

3       the proceedings are about.  So my finding really -- well,

4       I want to give you an opportunity to say anything you

5       wish to say, Mr. Van Dyke.

6              MR. VAN DYKE:  Um, well, your Honor, I said

7       this is the first I heard today that the Clerk's Office

8       didn't have notice of this stuff.  Frankly, after today,

9       I am inclined to pull every disciplinary action I have

10      ever had and resend them to every other court I am

11      admitted to by certified mail today because I have no

12      clue what happened.

13             I -- but that having been said, with respect

14      to continuing to represent Mr. Uthe, I read the order of

15      this Court's motion to reconsider, and there are a few

16      things I believe I need to address.

17             The question arises whether I can continue

18      to appear, and the question is, am I admitted to practice

19      in this District?  I think the Court knows that I am.

20             Am I admitted in good standing in the

21      highest court in at least one state?  I have furnished

22      that proof by means of a certificate of good standing,

23      both in my initial submission and in the supplement when

24      I remembered that it was only good for 30 days.

25             I want to make sure that the Court had one.

1    It would appear that I am.  There is no conflict of

2    interest in this case that would prohibit me from

3    representing Mr. Uthe.  I complied with this Court's

4    orders to make the written submission.  I believe I have

5    addressed all of the things that I was ordered to address

6    by the Court in that written submission.

7              And I think one of the things that the Court

8    might be concerned with is why in some district courts

9    disciplinary action was taken but in other courts

10   disciplinary action was not taken.

11             Frankly, like I said, I know for a fact I

12   didn't timely comply with the local rule with respect to

13   the second disciplinary action, and then I remembered I

14   know for a fact, after being admonished by Judge

15   Kernodle, that I remedied that on or approximately June

16   15th.

17             It would be on or around that point, and you

18   know, I sent it by regular mail.  It was not surprising

19   to me for a lot of these that no disciplinary action was

20   taken frankly because the -- I had already been

21   disciplined by so many courts with respect to the latest

22   one in Georgia.  No Court imposed any disciplinary action

23   with respect to the discipline that was finalized by

24   Georgia in 2023.

25             I -- really, a majority of the courts that

1    were notified took no action with respect to this.

2                THE COURT:  But don't you think that that's

3    a little -- let me just pause you right there.

4                So as I indicated before, what's available

5    from what you have submitted -- and I am recognizing that

6    there is a misdemeanor conviction, and I don't know that

7    we really need to get into it -- but there are escalating

8    disciplinary actions out of the state of Texas.

9                Then, according to at a later point you

10   provided Colorado, you provided the District of Columbia.

11   Georgia suspends you for three years.  That many actions

12   are being filed against one individual.

13               I am sure you could agree that that is -- it

14   is more than average.  The fact that there would be no

15   inquiry from a court, that didn't raise any questions to

16   you as to whether or not you had properly submitted prior

17   notices of disciplinary action?

18               MR. VAN DYKE:  It did not, and the reason it

19   did not is because, specifically with respect to the

20   federal courts, is because with respect to -- with

21   respect to the second Texas disciplinary action, in

22   particular, the U.S. District Court for the Northern

23   District of Texas noted that the disciplinary order

24   specifically prohibited me during the term of the

25   suspension from practicing in any Texas State Court or

1   any federal courts.

2                   And that the Court expected me to comply

3   with the order and didn't -- and the Court did not in the

4   Northern District of Texas, in fact, did not institute

5   reciprocal disciplinary action based on that second

6   order.

7                   So that's why --

8                   THE COURT:  But they responded.  So

9   you provided notice to them, and they responded,

10  correct?

11                  MR. VAN DYKE:  Yes, they did.  But the

12  Western District of Texas did not.  Like I said, the

13  Western District of Texas did not respond.

14                  I didn't even know in the Western District

15  of Texas that I had been suspended until I notified them

16  of the Georgia discipline in 2023, and in the Western

17  District of Texas, they have a procedure very much like

18  the local rules of this Court in Ohio where they have got

19  a committee that disciplinary actions are referred to.

20                  I sent a copy of the letter with the judge's

21  handwritten note on it.  I made it part of my submission.

22                  So in light of all those things, no, I was

23  not -- I was not surprised by not receiving inquiries

24  from some of that stuff.

25                  Now, if I had been disbarred, yeah, I would

1    have expected to receive something.  But given that the

2    active courts of these suspensions were for six months or

3    less -- one of them was a fully probated suspension.

4              By the time we got to that point, no, I was

5    not surprised that I had not received anything.  I mean,

6    understand, your Honor, there was the December 2018 and a

7    February 2019.  Like I said, by the time I disclosed

8    the February 2019 one -- February 2018 was fully

9    probated.  By the time I disclosed the February 2019 to

10   anyone, the suspension had already expired.

11             And I was at that point serving the

12   six-month suspension for being in Texas, based on the May

13   1st, 2020, discipline.

14             And again, I was not surprised to not

15   receive anything when I notified the courts on that one

16   because it was the middle of the pandemic.  I assumed

17   without knowing that the courts were running on a

18   skeleton crew, and frankly, I assumed I would get popped

19   after the pandemic.

20             THE COURT:  Have any disciplinary matters

21   been commenced against you since April of 2020?

22             MR. VAN DYKE:  No.  I have not been

23   disciplined at all.  I have not had any grievances filed

24   against me.  The last thing was the matter -- well, there

25   was the Georgia thing, which also addressed the same

1    thing.

2          That was the latest order, Judge, but the

3    last disciplinary thing was the May 1st, 2020, thing,

4    both that and all -- the order from Georgia addressed

5    conduct alleged to have occurred in 2018-2019.  There has

6    been nothing.

7          I returned to law practice officially in

8    November of 2020 when the active part of the Texas

9    discipline expired.  I am now a partner at the firm

10   that ended up hiring me.  I have court-appointed

11   cases locally.  I have had no issues whatsoever since

12   then.

13         And I hope I am not doing a poor job with

14   the Court here today.  I mean, if I seem frustrated, I

15   mean, obviously, I am mortified that the things that I

16   remember sending out weren't received.  But I mean a lot

17   of these things happen.

18         But for me, it was a great deal of time ago,

19   and I have moved on with my life.  I have put it behind

20   me.  I sought treatment for the issues that I was having

21   back then, and I was successful in treatment.

22         And with respect to the Court, I understand

23   why the Court wants to have this hearing.  I do think

24   at some point I need to be permitted to move on with my

25   life.

1              THE COURT:  Well, I certainly understand.

2              First of all, I want to say I commend you

3      for seeking any help that you needed, and certainly, that

4      it had been successful for you, and you have been able to

5      return to the practice of law is commendable.

6              And so I am not in any way taking away from

7      the great progress that you've made, but when somebody

8      puts to the Court that there is non compliance with a

9      local rule, if the Court doesn't enforce its own rules or

10     its own orders, nobody will.  And so an inquiry has to be

11     made.

12             And I appreciate that you may feel

13     frustrated by it, but it is certainly necessary for the

14     Court to inquire, which is why it has.

15             Based on what you have said, what I have

16     read in the filings, and what I know of matters based on

17     all that has been presented, I do find for purposes of

18     this case -- and only this case because I cannot speak to

19     your admission generally -- but to this case, you may

20     continue to represent Mr. Uthe.

21             There have been no matters brought against

22     you since 2020.  All suspensions have been served and

23     disciplinary matters resolved.  You are -- and I do

24     appreciate the supplement because that 30 days is in the

25     local rules -- that you are a member of good standing as

1    indicated.

2              So this continued representation of Mr. Uthe

3    is permitted as I indicated.  But I do want to caution

4    you that -- and I have to say this because, I mean, the

5    fact that there are two clerks in different jurisdictions

6    saying they have not received communications that you

7    have represented you made, it does give this Court great

8    pause, so I have to say this.

9              MR. VAN DYKE:  Yeah.

10             THE COURT:  If the Court later learns of

11   information that contradicts your filing or anything that

12   you have said here in Court, Mr. Van Dyke, there will be

13   a show cause order issued, and there will be another

14   hearing to address any failures to be candid with the

15   Court.

16             Do you understand?

17             MR. VAN DYKE:  I understand that.  In fact,

18   what I intend to do is send out some certified mailings

19   this afternoon and make sure that every other Court is

20   aware of this.

21             If the Court wants me to resend everything

22   to the Clerk of this Court this afternoon with my

23   certified mail and provide the Court proof of that, I

24   would be delighted to comply with the orders of the Court

25   in that regard.

1          THE COURT:  Well, I think at this point,

2     based on document 18, which is your initial filing and

3     the supplement, I think that's document 19, unless there

4     is something else that you have not complied --

5          MR. VAN DYKE:  No.

6          THE COURT:  -- I think that that would be a

7     full disclosure of all prior matters.

8          I am going to advise the committee that

9     handles admissions generally of your filing, they

10    certainly will have an opportunity to view the transcript

11    should they wish to do so.

12         My decision today is limited just to this

13    case because, of course, you filed a notice of appearance

14    in this case before me.

15         So my finding is limited.  There may or may

16    not be a general inquiry made by the committee, but

17    certainly, for purposes of this case, unless I hear

18    something to the contrary of anything that you have

19    represented in your filings or today in this hearing, you

20    may continue to represent Mr. Uthe.

21         The last matter then to address is the

22    Plaintiff's response to your motion to dismiss.

23         Mr. Quinlan or Mr. Herdman, the Court stayed

24    the response deadline so that this matter could be

25    resolved.  That motion is, in fact, a live and pending

1 | motion.

2 |           How much time do you seek to submit an
3 | opposition brief?

4 |           MR. HERDMAN:  We would ask for 30 days, your
5 | Honor.

6 |           THE COURT:  Mr. Van Dyke, any objection?

7 |           MR. VAN DYKE:  No, your Honor.

8 |           THE COURT:  All right.  As unopposed, that
9 | request for an additional 30 days from the date of today
10 | to submit an opposition brief to the pending motion to
11 | dismiss is granted.

12 |           Before we adjourn, are there any other
13 | matters to address at this time on behalf of the
14 | Plaintiffs?

15 |           MR. HERDMAN:  None, your Honor.

16 |           THE COURT:  Mr. Salters, I don't want to
17 | leave you  out.  If there is anything you wish.

18 |           MR. SALTERS:  Nothing on behalf of Brandon
19 | Perdue and Sherri Perdue, your Honor.

20 |           THE COURT:  All right.  Thank you very much.

21 |           Mr. Van Dyke?

22 |           MR. VAN DYKE:  Nothing.  I appreciate the
23 | Court's time and consideration today.

24 |           THE COURT:  All right.  I thank you all for
25 | your time.  That adjourns this hearing.  Take care,

1    everyone.

2                    MR. HERDMAN:  Thank you.

3                    (Hearing concluded at 1:05 p.m.)

4                         - - - - -

5                    C E R T I F I C A T E

6                    I, George J. Staiduhar, Official Court

7    Reporter in and for the United States District Court,

8    for the Northern District of Ohio, Eastern Division,

9    do hereby certify that the foregoing is a true

10   and correct transcript of the proceedings herein.

11

12

13

14                    s/George J. Staiduhar
                      George J. Staiduhar,
15                    Official Court Reporter

16                    U.S. District Court
                      801 W. Superior Ave., Suite 7-184
17                    Cleveland, Ohio 44113
                      (216) 357-7128
18

19

20

21

22

23

24

25