UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE COMMUNITY CHURCH OF CHESTERLAND OHIO, *et al.*, | ) ) ) | CASE NO. 1:24-cv-00642 |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | **MEMORANDUM OPINION** |
| AIMENN PENNY, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendant Chris Uthe's motion to dismiss. (Doc. 17.) Plaintiffs the Community Church of Chesterland Ohio ("Community Church"), Jess Peacock ("Peacock"), Megan Carver ("Carver"), and Constance Becker ("Becker") opposed the motion (Doc. 23), and Uthe replied (Doc. 24).[1] For the reasons stated below, the motion to dismiss is DENIED.

## I. BACKGROUND

### A. Factual Allegations[2]

The Community Church is an "Open and Affirming Church" welcoming "all people regardless of race, gender, sexual orientation, nationality or ethnicity." (Doc. 1 at ¶ 3.) It participates and sponsors events throughout the year to support its diverse community, including events supporting the LGBTQIA+ community. (*Id.* at ¶ 4.)

Defendants are members of White Lives Matter Ohio, a chapter of the national White

---

[1] Defendant Aimenn Penny has not responded to the Complaint. Defendants Brandon Perdue ("Mr. Perdue") and Sherri Perdue ("Ms. Perdue") answered on August 16, 2024. (Doc. 21.)

[2] On a motion to dismiss, all well-pleaded factual allegations are accepted as true. *Heyward v. Cooper*, 88 F.4th 648, 653 (6th Cir. 2023).

Lives Matter organization ("Organization"). (*Id.* at ¶ 5.) The Organization engages in "pro-White activism." (*Id.* at ¶ 39.) Its stated goal is to protect "the future of White Children" and "secure a future for White Children in an [sic] 99% White Land." (*Id.* at ¶ 43.) Organization members must engage in real-life activism. (*Id.* at ¶ 46.)

White Lives Matter Ohio was founded in or around April 2021. (*Id.* at ¶ 44.) Around that time, it created a Telegram channel to communicate with members. (*Id.* at ¶ 41.) White Lives Matter Ohio seeks to advance the same agenda as the Organization. To that end, White Lives Matter Ohio members engage in activities designed to interfere with or prevent events they deem anathema to their goal of protecting "White Children" and "White Land." (*Id.* at ¶ 56.) White Lives Matter Ohio is led by Uthe. (*Id.* at ¶ 61.)

Between December 2022 and continuing through April 2023, Defendants interrupted or forced the cancellation of several community or religiously sponsored events and engaged in actions intended to promote their stated mission.

Red Oak Community School planned to host a "Holi-Drag Storytime" event on December 3, 2022. (*Id.* at ¶¶ 73–80.) White Lives Matter Ohio announced it would appear and protest the event. (*Id.* at ¶ 77.) In response, organizers cancelled the event. (*Id.*) Notwithstanding the cancellation, White Lives Matter Ohio members protested anyway. (*Id.* at ¶78.) They displayed signs and yelled such things as "Groomers Not Welcome" to people passing by. (*Id.* at ¶ 79.)

On February 11, 2023, White Lives Matter Ohio held a rally as part of a coordinated "day of action." (*Id.* at ¶ 84.) The group publicized the event on its Telegram channel, stating, "this land is our land. We will secure the existence of our people and future for our White children." (*Id.* at ¶ 86.)

Later that month, on February 25, 2023, White Lives Matter Ohio gathered to rally against a perceived racial incident. (*Id.* at ¶ 88.) The organization publicized the rally by posting a video online, adding the group "no longer will be the ones standing idly by . . . . We will respond to force with an increased amount of force." (*Id.* at ¶ 92.)

On March 4, 2023, White Lives Matters Ohio met in Wadsworth, Ohio to protest an upcoming event called "Rock-n-Roll Humanist Drag Queen Story Hour" scheduled for March 11. (*Id.* at ¶ 95.) Defendants distributed flyers to recruit others and cause the cancellation of the event. (*Id.* at ¶ 99.) On the day of the event, White Lives Matter Ohio held a rally in which members, including Defendants, carried swastika flags and shouted racial and homophobic slurs. (*Id.* at ¶¶ 105–06.) Uthe followed counter-protestors yelling "faggot pedophile" and "fucking faggot." (*Id.* at ¶ 110.) Following the event, Uthe stated "That's right and we will most definitely be doing it again. . . . We will be shitting on drag groomer events every chance we get. EXPECT US!!!" (*Id.* at ¶ 116.)

The Community Church planned to host two events on April 1, 2023. (*Id.* at ¶ 122.) The events included a drag queen brunch and a story hour. (*Id.*) Prior to the event, the Community Church received several communications like those associated with White Lives Matter Ohio's other protests. (*Id.* at ¶¶ 124–29.) These messages included statements such as: "pedophiles involved hosting story time you're disgusting! child groomers church! can't wait for April 1st." and "Please sir listen. Don't do something that God will hate. I beg of you. If you do this the blood will be upon your hands." (*Id.* at ¶¶ 126–27.) The Community Church also received a voicemail, which stated, in part: "You are destroying the youth of our world. No one cares if you're gay, but a man thinking he's a woman? That's bullshit. You will pay for it. You will pay. You will pay." (*Id.* at ¶ 129.) Then, on March 25, 2023, Penny damaged the Community

Church with two incendiary devices. (*Id.* at ¶ 130.) Penny did so to force the cancellation of the events. (*See id.* at ¶ 135.) Plaintiffs allege the other Defendants conspired with Penny to commit the arson because of their "animus towards Community Church's and its members' religious beliefs and practices." (*Id.* at ¶ 134.)

Later on March 25, 2023, and again on March 26, 2023, Penny and other members of White Lives Matter Ohio (including Uthe) attended the Cleveland-Berea Gun Show. (*Id.* at ¶ 118.) There, Penny, Uthe, and others passed out flyers which read, in part, "our children pay the price for our inaction—stand up white man." (*Id.* at ¶ 120.) White Lives Matter Ohio publicized their attendance at the gun show, posting a video encouraging members to "get out here and put in work." (*Id.* at ¶ 121.)

### B. Procedural History

Plaintiff's Complaint states six causes of action in the following order: conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3) (Count One, all Defendants); violation of the Freedom of Access to Clinic Entrances & Places of Religious Worship Act (FACE Act) (18 U.S.C. § 268) (Count Two, all Defendants); violation of the FACE Act (Count Three, Penny only); civil liability for vandalism, desecration, or ethnic intimidation under R.C. § 2307.60 and § 2307.70 (Count Four, Penny in his personal capacity and all Defendants); trespass to land (Count Five, Penny in his personal capacity and all Defendants); and intentional infliction of emotional distress (Count Six, Penny in his personal capacity and all Defendants). (*Id.*)

On July 11, 2024, Uthe filed the instant motion to dismiss. (Doc. 17.) Mr. Perdue and Ms. Perdue did not move to dismiss, and instead, filed an answer on August 16, 2024. (Doc. 21.) Penny has not responded to the Complaint.

**II. LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests whether the complaint meets this standard. To survive a Rule 12(b)(6) motion for failure to state a claim, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When courts evaluate whether a complaint makes out a plausible claim, they must accept all factual allegations as true. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). Courts must also draw all reasonable inferences in favor of the plaintiff, and they must generally construe the complaint in the light most favorable to the plaintiff. *Id.* But courts do not accept legal conclusions or other conclusory allegations as true. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)). And courts need not make unwarranted factual inferences. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

**III. LAW AND ANALYSIS**

Uthe asserts three arguments in support of his motion. First, Uthe argues Count One fails because it does not sufficiently plead a § 1985 conspiracy (and by extension Counts Two, Four, and Five should also be dismissed for failure to plead a conspiracy). (Doc. 17-1 at 129.)[3]

---

[3] For ease and consistency, record citations are to the electronically stamped CM/ECF document

Second, Uthe argues Plaintiffs' § 1985 claim fails to plead a sufficient racial motivation. (*Id.* at 132.) Lastly, Uthe argues the FACE Act claim (Count Two) and intentional infliction of emotional distress claim (Count Six) are barred because the claims are based on conduct protected by the First Amendment. (*Id.* at 135.)

      A.      **Section 1985 Claim (Count One)**

Count One alleges interference with civil rights under § 1985. (Doc. 1 at 30.) Section 1985 prohibits various conspiracies. Among them, § 1985(3) "prohibits conspiracies to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

Stating a claim under § 1985(3) requires factual allegations of

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Broth. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983). A plaintiff must allege "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Moniz v. Cox*, 512 F. App'x 495, 499 (6th Cir. 2013) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)). And, because Plaintiffs' § 1985 claim is based on violations of § 1982, Plaintiffs must show racial animus sufficient to satisfy a § 1982 claim. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413–14 (1968). Uthe argues the Complaint fails to allege a conspiracy and fails to plead a racial animus. (Doc. 17-1 at 129, 132.)

      1.      **Acts Attributable to Uthe**

To Uthe, the absence of any allegation that he worked directly with Penny to firebomb

---

and PageID# rather than any internal pagination.

the church is fatal to the claims alleged. The Sixth Circuit has explained:

> Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). A civil conspiracy claim must be "must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a . . . claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Yet a plaintiff "need not prove an express agreement among the conspirators, nor must they show that each conspirator knew 'all of the details of the illegal plan or all of the participants involved.'" *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). Instead, a plaintiff may "rely on circumstantial evidence to establish an agreement among the conspirators." *Id.*

Here, Plaintiffs allege a specific plan to violate and deprive Plaintiffs of their property and interfere with their protected rights. (Doc. 1 at ¶¶ 65–69.) This plan is supported by allegations of overt acts in furtherance of this conspiracy. Beginning in December 2022, Defendants protested, interfered with, and caused events to be cancelled, including drag show events. (*Id.* at ¶¶ 73–130.) Defendants stated an intention to continue these protests. (*Id.* at ¶ 66.) This led to the primary overt act at issue—the alleged planned arson of the Community Church. (*Id.* at ¶ 130.)

The Complaint plausibly alleges Uthe was part of this conspiracy. (*Id.* at ¶¶ 61, 65–69.) Uthe is the leader of White Lives Matter Ohio. (*Id.* at ¶ 61.) Uthe personally participated in several events from December 2022 through March 2023. (*Id.* at ¶¶ 76–77, 93, 106, 110, 116,

119.) Uthe and others communicated through a White Lives Matter Ohio Telegram to further their plans. (*Id.* at ¶ 55.) During these events, and through the White Lives Matter Ohio Telegram, Uthe allegedly conspired with Penny and the other Defendants to firebomb the Community Church to prevent the Community Church from hosting a drag show event. (*Id.* at ¶¶ 65–69.)

To Uthe, his motion to dismiss should be granted because he now offers other facts, namely that he did not act with Penny to firebomb the Community Church. (Doc. 17-1 at 124, 132.) This simply challenges whether the facts alleged are accurate. The Court, however, must focus on sufficiency and plausibility.[4] *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570).

Further, Plaintiffs need not allege an express agreement, and Plaintiffs may rely on circumstantial evidence to show a conspiracy. *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) ("[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire . . . circumstantial evidence may provide adequate proof of conspiracy."). Uthe's leadership role in White Lives Matter Ohio, its stated intent to promote

---

[4] Uthe argues the Complaint improperly relies on allegations "upon information and belief." (Doc. 24 at 268–69.) In this Circuit, "pleading on information and belief is allowed 'where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Novus Grp., LLC v. Prudential Fin., Inc.*, No. 19-cv-208, 2019 WL 4452708, 2019 U.S. Dist. LEXIS 161270, at *23 (S.D. Ohio Sept. 17, 2019) (quoting *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447–48 (6th Cir. 2014)); *see also* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d 2019) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible," and are even "a practical necessity."). The allegations made upon information and belief relate to matters within the exclusive possession of Defendants or are allegations which are based on sufficient factual information that make the allegations plausible.

and protect the white race, Uthe's participation in events (to include events predating the arson), and communications with Penny and others are sufficient to satisfy this Court that there is at least circumstantial evidence of Uthe's participation in the conspiracy. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 517–18 (6th Cir. 2020) (conspiracy alleged where "the complaint plausibly alleges the generalities of the alleged conspiracy," "identifies plenty of overt acts taken to further this conspiracy," and "the defendants joined in the conspiracy's objectives").

2. **Racial Animus**

Under both § 1985 and § 1982, the conspiracy must have been motivated, "at least in part," by race. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275–76 (1993) ("invidiously discriminatory animus" for § 1985 claim "requires that the defendant have taken his action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.") (quotations and citations omitted). A § 1985 claim may be brought by individuals "who champion" others' race-based causes. *United Broth. of Carpenters*, 463 U.S. at 836. Meaning, a sufficiently pleaded conspiracy includes those supported by factual allegations that conspirators *promoted* one race over any other to deprive others of protected rights and which resulted in injury.

The allegations satisfy the pleading requirements for such a conspiracy claim. Defendants' conspiracy targeted the Community Church because of its stated intent to be socially and religiously inclusive. (Doc. 1 at ¶¶ 134–36, 164.) Uthe would have the Court stop there, but the allegations go further. Defendants were also known members of White Lives Matter Ohio, part of the larger Organization, a white supremacist group. (*Id.* at ¶ 5.) The goal of the Organization is to "secur[e] the existence of our race and providing a future for White Children . . . ." (*Id.* at ¶ 42.) The primary purpose of the Organization is "the future of White

Children" and to "secure a future for White Children in an [sic] 99% White Land."  (*Id.* at ¶ 43.)  Defendants are also alleged to have engaged in a series of actions to prevent events they believed were harmful to white children, including firebombing the Community Church.  (*Id.* at ¶ 65.)

Construing the allegations in Plaintiffs' favor, which the Court must do at this stage, the Court finds Count One is sufficiently pleaded, and Uthe's motion to dismiss this count is denied.[5]

### B. FACE Act (Count Two) and Intentional Infliction of Emotional Distress (Count Six)

Uthe argues the FACE Act and intentional infliction of emotional distress claims must also be dismissed.  (Doc. 17-1 at 135.)  Uthe's arguments in support of dismissal are Plaintiffs' purported failure to properly plead a conspiracy and the alleged actions are First Amendment protected activity.  (*Id.*)  Having already found a properly pleaded conspiracy claim, Uthe's first argument for dismissal of Counts Two and Six is rejected.  The First Amendment also provides no shield here.  The FACE Act and intentional infliction of emotional distress claims turn on an alleged conspiracy in which Penny ultimately firebombed the Community Church.  Violent conduct is not protected by the First Amendment.  *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("[A] physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment."): *see also United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("the First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent") (citation omitted).

---

[5] For the same reasons explained herein, Uthe's assertion that these purported pleading deficiencies require dismissal of Counts Two, Four, and Five (Doc. 17-1 at 129) is without merit.

## IV. CONCLUSION

For the reasons stated above, Defendant Chris Uthe's motion to dismiss (Doc. 17) is DENIED.

**IT IS SO ORDERED.**

Date:  December 11, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE