**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE COMMUNITY CHURCH OF CHESTERLAND OHIO, JESS PEACOCK, MEGAN CARVER, and CONSTANCE BECKER, | Civil Action No.: 1:24-cv-00642-BMB |
| | Judge Bridget Meehan Brennan |
| Plaintiffs, | |
| v. | |
| AIMENN D. PENNY, CHRIS UTHE, BRANDON PERDUE, SHERRI PERDUE, and UNNAMED MEMBERS OF WHITE LIVES MATTER OHIO, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

**Page**

ISSUES TO BE DECIDED .......................................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................ 1

STATEMENT OF FACTS .......................................................................................... 3

    I.      UNDISPUTED FACTS .................................................................... 3

    II.    PROCEDURAL BACKGROUND .................................................. 7

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ............................................................................................................... 8

    I.      DEFENDANT'S FIREBOMBING OF COMMUNITY CHURCH
         VIOLATED 18 U.S.C. §§ 248(a)(2) AND (a)(3). .................................. 8

         A.    Defendant Used Intentional Force to Interfere with Plaintiffs'
             Religious Freedoms in Violation of 18 U.S.C. § 248(a)(2). ..................... 8

         B.    Defendant Intentionally Damaged Property of a Place of Worship
             in Violation of 18 U.S.C. § 248(a)(3). .......................................... 9

    II.    DEFENDANT'S CONDUCT VIOLATED OHIO REV. CODE §§
         2307.60(A)(1) AND 2307.70(A). ................................................... 11

         A.    Defendant's Criminal Conviction Establishes Civil Liability Under
             Ohio Rev. Code § 2307.60(A)(1). ............................................... 11

         B.    Defendant's Conduct Amounted to Desecration and Ethnic
             Intimidation Under Ohio Rev. Code § 2307.70(A). ............................... 11

    III.   DEFENDANT TRESPASSED WHEN HE ENTERED ONTO
         COMMUNITY CHURCH'S PROPERTY. ...................................... 13

    IV.   DEFENDANT INTENTIONALLY CAUSED EMOTIONAL DISTRESS
         TO PLAINTIFF MEGAN CARVER BY FIREBOMBING
         COMMUNITY CHURCH. ............................................................. 14

         A.    Defendant Penny Knew or Should Have Known that Firebombing
             Community Church Would Cause Ms. Carver Severe Emotional
             Distress. ..................................................................... 15

         B.    Throwing Molotov Cocktails at a Church Constitutes Extreme and
             Outrageous Conduct. ........................................................ 16

         C.    The Firebombing Proximately Caused Ms. Carver's Mental
             Anguish .................................................................... 17

         D.    Ms. Carver's Panic Symptoms and Physical Manifestations of
             Stress Constitute Severe and Debilitating Emotional Distress ............... 17

CONCLUSION ................................................................................................ 19

i

## TABLE OF AUTHORITIES

**Page**

CASES

*Accettola v. Big Sky Energy*,
   2018-Ohio-5076 (11th Dist.) ............................................................................13, 14

*Apel v. Katz*,
   83 Ohio St. 3d 11 (1998)...............................................................................14

*Binns v. Fredendall*,
   32 Ohio St. 3d 244 (1987)..............................................................................18

*Buddenberg v. Weisdack*,
   2020-Ohio-3832 ...........................................................................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).......................................................................................8

*Clay v. Shriver Allison Courtley Co.*,
   2018-Ohio-3371 (7th Dist.) ...........................................................................17

*Crisis Pregnancy Servs., Inc. v. Page*,
   No. 23-CV-1057-LJV, 2025 WL 2793581 (W.D.N.Y. Sept. 30, 2025)..................10

*Cruz v. Eng. Nanny & Governess Sch. Inc.*,
   2017-Ohio-4176 (8th Dist.) ...........................................................................18

*Hayes v. Heintz*,
   2002-Ohio-2608 ....................................................................................12, 13

*Honaker v. Smith*,
   256 F.3d 477 (7th Cir. 2001) .........................................................................17

*Household Credit Servs., Inc. v. Driscol*,
   989 S.W.2d 72 (Tex. App. 1998)......................................................................17

*Jacobson v. Kaforey*,
   2016-Ohio-8434 ...........................................................................................11

*Jasar Recycling, Inc. v. Major Max Mgmt. Corp.*,
No. 4:08-cv-2830, 2010 WL 395212 (N.D. Ohio Jan. 22, 2010) ...............................................8

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
16 F.4th 47 (2d Cir. 2021) ............................................................................................9

*Lyons v. Stovall*,
188 F.3d 327 (6th Cir. 1999) ...............................................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).........................................................................................8

*Meyers v. Hot Bagels Factory, Inc.*,
131 Ohio App. 3d 82 (1st Dist. 1999)....................................................................15, 18

*Mwila v. Islamic Republic of Iran*,
33 F. Supp. 3d 36 (D.D.C. 2014) .........................................................................16

*Nayyar v. Mount Carmel Health Sys.*,
No. 2:10-CV-00135, 2013 WL 2418072 (S.D. Ohio June 3, 2013) .......................................18

*New Beginnings Ministries v. George*,
No. 2:15-cv-2781, 2018 WL 11378829 (S.D. Ohio Sept. 28, 2018).........................................9

*Olive Oil, L.L.C. v. Cleveland Elec. Illuminating Co.*,
2021-Ohio-2309 (8th Dist.) ...............................................................................14

*Paugh v. Hanks*,
6 Ohio St. 3d 72 (1983)....................................................................................18, 19

*Peterson v. Ruppright*,
452 F. Supp. 3d 735 (N.D. Ohio 2020)...................................................................18

*Phung v. Waste Mgt., Inc.*,
71 Ohio St. 3d 408 (1994)..................................................................................17

*Pyle v. Pyle*,
11 Ohio App. 3d 31 (8th Dist. 1983) ....................................................................15

*Reamsnyder v. Jaskolski*,
10 Ohio St. 3d 150 (1984)..................................................................................16

*Risch v. Friendly's Ice Cream Corp.*,
136 Ohio App. 3d 109 (1st Dist. 1999).................................................................19

iii

*Ryan v. Connor*,
    28 Ohio St. 3d 406 (1986)................................................................................................17

*State v. Hubaker*,
    2008-Ohio-1776...........................................................................................................12

*Stirgus v. Benoit*,
    No. 89 C 1276, 1990 WL 251790 (N.D. Ill. Dec. 26, 1990) .....................................16

*Tschantz v. Ferguson*,
    97 Ohio App. 3d 693 (8th Dist. 1994) .......................................................................15

*U.S. Commodity Futures Trading Comm'n v. Complete Devs., LLC*,
    No. 4:10-cv-2287, 2014 WL 794181 (N.D. Ohio Feb. 26, 2014) ................................8

*United States of America v. Penny*,
    No. 1:23-cr-00226.....................................................................................................4, 5

*United States v. Bird*,
    401 F.3d 633 (5th Cir. 2005) (per curiam).................................................................10

*United States v. Uphoff*,
    232 F.3d 624 (8th Cir. 2000) .....................................................................................10

*Valore v. Islamic Republic of Iran*,
    700 F. Supp. 2d 52 (D.D.C. 2010)..............................................................................16

*Weisblat v. John Carroll Univ.*,
    748 F. Supp. 3d 517 (N.D. Ohio 2024).........................................................................4

*Wuliger v. Christie*,
    310 F. Supp. 2d 897 (N.D. Ohio Mar. 30, 2004) .........................................................7

*Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*,
    6 Ohio St. 3d 369 (1983)............................................................................................16

**STATUTES**

18 U.S.C. § 247(a)(2)...........................................................................................................5, 11

18 U.S.C. § 247(d)(3) ...........................................................................................................5, 11

18 U.S.C. § 248.........................................................................................................1, 2, 8, 19

18 U.S.C. § 248(a)(2)............................................................................................ passim

18 U.S.C. § 248(a)(3).........................................................................................2, 7, 9, 10

18 U.S.C. § 844(h)(1) ..............................................................................................5, 11

CAPA ........................................................................................................................9

FACE Act................................................................................................................ passim

Ohio Rev. Code § 2307.60....................................................................................1, 2, 11

Ohio Rev. Code § 2307.60(A)(1) ........................................................................... passim

Ohio Rev. Code § 2307.60(A)(2) ..............................................................................11

Ohio Rev. Code § 2307.70.......................................................................................1, 2

Ohio Rev. Code § 2307.70(A) ................................................................................ passim

Ohio Rev. Code § 2927.11.........................................................................................12

Ohio Rev. Code § 2927.12.........................................................................................12

Ohio Rev. Code § 2927.12(A) ...................................................................................13

**RULES**

Fed. R. Civ. P. 5(b)(2)(C) ..........................................................................................7

Fed. R. Civ. P. 6(d) ....................................................................................................7

Fed. R. Civ. P. 36(a)(3)............................................................................................7, 8

Fed. R. Civ. P. 56(a) ..................................................................................................7

Fed. R. Civ. P. 56(c)(1)(A) .........................................................................................8

v

**ISSUES TO BE DECIDED**

Issue One: Whether the Court should grant summary judgment in favor of Plaintiffs The Community Church of Chesterland Ohio ("Community Church"), Megan Carver ("Ms. Carver"), and Constance Becker ("Ms. Becker") (collectively, "Plaintiffs") where no genuine disputes of material fact remain as to whether Defendant Aimenn Penny ("Defendant Penny" or "Defendant") violated and deprived Plaintiffs of their property rights and interfered with Plaintiffs' lawful exercise of their First Amendment right to religious freedom, in violation of the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248, Ohio Revised Code §§ 2307.60 and 2307.70 governing civil liability for vandalism, desecration, or ethnic intimidation, and the common law prohibition against trespass, and judgment is proper as a matter of law.

Issue Two: Whether the Court should grant summary judgment in favor of Ms. Carver on her claim for intentional infliction of emotional distress ("IIED") against Defendant Penny where no genuine disputes of material fact remain as to whether Penny, by throwing Molotov cocktails at Community Church, committed an extreme and outrageous act that he knew or should have known would cause serious emotional distress to Ms. Carver, proximately caused Ms. Carver's serious and debilitating mental anguish, and judgment is proper as a matter of law.

**SUMMARY OF THE ARGUMENT**

Plaintiffs are entitled to summary judgment against Defendant for violation of the FACE Act, 18 U.S.C. § 248 (Count III); civil liability for vandalism, desecration, or ethnic intimidation in violation of Ohio Rev. Code §§ 2307.60 and 2307.70 (Count IV); and trespass (Count V), and Ms. Carver is entitled to summary judgment against Defendant for IIED (Count VI).  The undisputed material facts, as established through Defendant's sworn admissions, guilty plea, criminal conviction, and deposition testimony, demonstrate that Defendant is liable for

1

(1) violating the FACE Act under 18 U.S.C. §§ 248(a)(2) and (a)(3); (2) desecrating Plaintiffs' property and committing ethnic intimidation in violation of Ohio Rev. Code §§ 2307.60(A)(1) and 2307.70(A); (3) committing common law trespass to land; and (4) intentionally inflicting emotional distress.

Defendant was a member of White Lives Matter Ohio ("WLM Ohio"), a white supremacist group motivated by racial, homophobic, and transphobic animus.  Driven by his opposition to Community Church's inclusive and affirming religious beliefs regarding the LGBTQIA+ community and his desire to protect white children, Defendant resolved to violently attack Community Church in response to a scheduled drag story time event.  On March 25, 2023, Defendant carried out his attack on Community Church.  Defendant assembled Molotov cocktails, drove over fifty miles to Community Church, and threw the Molotov cocktails at Community Church with the intent to burn it to the ground.  Defendant has admitted under oath that he attacked Community Church to "send a message" and to "scare" Community Church and its members from exercising their religious beliefs.

Defendant pled guilty to criminal charges related to the firebombing, and was criminally convicted on October 23, 2023 for obstructing persons in the free exercise of their religious beliefs and using fire or explosives to commit a felony.

Defendant's criminal conviction and sworn admissions foreclose any genuine dispute of material fact on many of Plaintiffs' claims.  Because no genuine issue of material fact remains, Plaintiffs are entitled to summary judgment as to Defendant Penny for violation of the FACE Act, 18 U.S.C. § 248 (Count III); civil liability for vandalism, desecration, or ethnic intimidation in violation of Ohio Rev. Code §§ 2307.60 and 2307.70 (Count IV); and trespass (Count V), and Ms. Carver is entitled to summary judgment as to Defendant Penny for IIED (Count VI).

**STATEMENT OF FACTS**

I.      **UNDISPUTED FACTS**

The Community Church of Chesterland ("Community Church") is a Christian Church belonging to the United Church of Christ denomination.  Declaration of Megan Carver in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment at ¶ 4, Exhibit 14.  A central tenet of its members' religious practice is its stance as an "Open and Affirming Church": Community Church and its members fully welcome all people regardless of race, gender, sexual orientation, nationality, or ethnicity.  *Id.*.  Community Church has been focused on social justice issues since the 1950s and holds regular events that are meant to show love and support, and embrace communities such as the LGBTQIA+ community.  *Id.* at ¶ 5.  Penny knew Community Church was "inclusive" and believed "God lov[es] all people, whether they're LGBT or not," "disagreed with" those beliefs, and held personal discriminatory animus against Plaintiffs both because of those beliefs and due to Plaintiffs' intention to host a drag queen brunch and story hour open to children.  Transcript of Deposition of Aimenn Penny 109:13–22, Exhibit 1; Plaintiffs' Requests for Admission to Aimenn Penny Nos. 3–7, Exhibit 2.

Defendant Penny was a member of WLM Ohio, a state-specific chapter of White Lives Matter ("WLM"), a national network of white supremacists dedicated to "further[ing] the interests of White Children through real-life action."  WLM Activist Manual 2.0, at 3, PERDUE 033, Exhibit 3; Ex. 1 at 20:18–24; Ex. 2 at No. 1.  WLM Ohio believes the LGBTQIA+ community is contributing to a "white genocide" and poses a threat to the "future for White Children."  *See* Ex. 1 at 34:5–12; Ex. 3 at 4, 6, PERDUE 034, 036.  To resist this "white genocide" and "white replacement," WLM Ohio members are personally tasked with the protection of white children against perceived threats.  Ex. 3 at 4, PERDUE 034 ("Our youth are our future and our primary motivation in this struggle is the future of White Children"); Ex. 1 at 70:25–71:5 ("As a white

3

man, if white children are involved, it's my inherent duty to help protect them and stop this sort of movement.").

In mid-March of 2023, Defendant learned that the Community Church was planning to host a drag story time event open to children on April 1, 2023.  Defendant-Aaron IS a GrOomer Chat 3/21/2023, Exhibit 4.  Defendant sent a flyer advertising the event in the WLM Ohio Telegram chat and began organizing a protest of the event.  *See* Perdue-Defendant Chat 3/16/2023, Exhibit 5; Ex. 1 at 84:15–86:1.

Defendant, incensed by the scheduled drag event, pivoted to the firebombing.  Ex. 1 at 105:7–24.  Defendant's motivation for the attack was rooted in his hatred for Community Church's inclusive religious beliefs, his hatred for the LGBTQIA+ community, and his desire to protect white children.  *Id.* at 109:13–111:13 ("Were you doing it to protect white children?" "Yes."); Ex. 2 at Nos. 13, 21–23, 25.  Defendant was disgusted by Community Church's inclusivity:  "Men should not dress up as females in front of kids and vice versa.  That's not natural.  And children … shouldn't see that kind of thing at all … especially in a public place of worship, supposed worship, of a God that is against such things.  And that's my justification for what I did."  *See United States of America v. Penny*, No. 1:23-cr-00226, Sent. Tr. 25:6–13 (N.D. Ohio Jan. 31, 2024) (ECF No. 37), Exhibit 6.[1]  Defendant wanted to "send a message . . . that shit is not welcome here."  FBI Interview of Aimenn Penny (Mar. 31, 2023) at 19:00, Exhibits 7 and 8.[2]  His stated intention was

---

[1] "[C]ourt filings from other lawsuits are matters of public record and are appropriate for judicial notice." *Weisblat v. John Carroll Univ.*, 748 F. Supp. 3d 517, 527 (N.D. Ohio 2024) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

[2] Exhibit 7 is an audio file and Exhibit 8 is a video file.  Plaintiffs will provide the Court with Exhibits 7 and 8 via a flash drive delivered to the Clerk's Office consistent with the Court's manual filing procedures.

"to stop" the drag story time event and "to scare [Community Church] from having future events like it in the future." Ex. 1 at 130:25–131:12.

Defendant spent the night before his attack getting drunk and creating Molotov cocktails in his bedroom. *United States of America v. Penny*, No. 1:23-cr-00226 (N.D. Ohio Mar. 31, 2023), Affidavit, ¶ 12, Exhibit 9; Ex. 1 at 84:17–86:1; 105:5–24; Ex. 2 at No. 15. On or around March 24, 2023, Defendant drove over fifty miles from his home in Alliance, Ohio, to Community Church. Ex. 9 at ¶ 10; Ex. 2 at No. 16. Penny entered Community Church property, though he "did not obtain permission or authorization from Plaintiffs" to enter the church property. Ex. 2 at No. 33; *see also id.* at Nos. 32, 34. Defendant ignited the Molotov cocktails, threw them at Community Church, and ran through Community Church's marquee sign with his own body. Ex. 9 at ¶ 5; *see United States of America v. Penny*, No. 1:23-cr-00226, Change of Plea Tr. 22:11–15, 25 (N.D. Ohio Dec. 15, 2023) (ECF No. 27), Exhibit 10; Ex. 2 at Nos. 17–19, 24; Ex. 1 at 111:20–25.

On March 31, 2023, Defendant confessed to the attack. *See* Ex. 7 and 8 at 18:00. On October 23, 2023, Defendant pled guilty to (1) obstruction of persons in the free exercise of their religious beliefs in violation of 18 U.S.C. § 247(a)(2) and (d)(3), which includes intentionally obstructing by force or threat of force, including by threat of force against religious real property, any person in the enjoyment of that person's free exercise of religious beliefs, or attempting to do so; and (2) arson in violation of 18 U.S.C. § 844(h)(1), which includes using fire or an explosive to commit the offense of obstruction of persons in the free exercise of religious beliefs. *United States of America v. Penny*, No. 1:23-cr-00226, Judgment (N.D. Ohio Jan. 29, 2024) (ECF No. 34), Exhibit 11.

As part of his guilty plea, Defendant confirmed the summary of facts submitted to the court by the prosecutor were true, including that "he would have felt better if the Molotov cocktails were more effective and burned the entire Church to the ground," and that he "took these actions intending to burn Community Church down by throwing Molotov cocktails at the building, using force and threat of force, and further intending to obstruct and attempt to obstruct persons in their enjoyment of their religious beliefs." *See id.*

Defendant's attack damaged Community Church's exterior doors and a banner on Community Church's exterior.  Ex. 9 at ¶ 5.  Defendant also destroyed Community Church's marquee sign.  Ex. 1 at 111:20–25.  This repair alone cost Community Church over $500.  *See* FastSigns Invoice, CCC_000449, Exhibit 12.

In addition to the physical and financial damage to Community Church, Defendant's attack caused Ms. Carver severe emotional distress.  Defendant does not contest the causal relationship. Ex. 1 at 130:15–19 ("You don't dispute that you caused emotional damage to the members of the church, caused them fear, right?" "To the point that they describe, yes."); Ex. 2 at Nos. 26–31.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████.[3]

---

[3] Plaintiffs filed a Motion for Leave to Redact and File Under Seal on May 22, 2026, seeking leave of court to file the instant opposition brief with redactions and to file certain exhibits under seal. (*See* ECF 63).  On May 26, 2026, the Court granted Plaintiffs' motion.  (*See* ECF 65).  Plaintiffs will separately file unredacted and/or sealed copies of the documents subject to Plaintiffs' motion consistent with the Court's order.

6

## II.    PROCEDURAL BACKGROUND

On April 10, 2024, Plaintiffs brought this action against Defendants, stating six causes of action, including four counts against Defendant Aimenn Penny in his personal capacity: (1) violation of the FACE Act (18 U.S.C. §§ 248(a)(2)-(3)) (Count III); (2) civil liability for vandalism, desecration, or ethnic intimidation under Ohio Rev. Code §§ 2307.60(A)(1) and 2307.70(A) (Count IV); (3) trespass to land (Count V); and (4) IIED (Count VI).  ECF No. 1.  On May 30, 2025, Plaintiffs served Defendant Penny with Plaintiffs' Requests for Admission via his court-appointed attorney.[4]  Ex. 2, Certificate of Service; Fed. R. Civ. P. 5(b)(2)(C).  Accordingly, Defendant Penny's responses were due on or about July 2, 2025—nearly eleven months ago.  Fed. R. Civ. P. 6(d), 36(a)(3).  Defendant Penny failed to respond to the discovery requests or request an extension to the response deadline, and fact discovery ended on January 12, 2026.  January 7, 2026 Non-Document Order.  Plaintiffs now move for summary judgment against Defendant Penny on Counts III, IV, and V, and Ms. Carver moves for summary judgment against Defendant Penny on Count VI.

**LEGAL STANDARD**

Summary judgment is appropriate where the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "When construing a motion for partial summary judgment, the court employs the normal summary judgment standard."  *Wuliger v. Christie*, 310 F. Supp. 2d 897, 900–01 (N.D. Ohio Mar. 30, 2004).  To prevail on a motion for summary judgment, the movant, if bearing the burden of

---

[4] Maxwell Martin was appointed by this Court to "provide advice and counsel to Mr. Penny on making statements, the invocation of his constitutional rights, whether at deposition, responding to discovery requests, or submitting an affidavit or declaration in opposition to a motion, and the legal consequences of making statements or invoking a constitutional right."  May 27, 2025 Non-Document Order.

7

persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment should be granted "when there is but one reasonable conclusion." *U.S. Commodity Futures Trading Comm'n v. Complete Devs., LLC*, No. 4:10-cv-2287, 2014 WL 794181, at *14 (N.D. Ohio Feb. 26, 2014) (citations omitted). If the record as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Further, Fed. R. Civ. P. 56(c)(1)(A) specifies that admissions on file can be an appropriate basis for granting summary judgment. Fed. R. Civ. P. 36(a)(3) provides that any matter of which an admission is requested is admitted unless the responding party serves upon the party requesting the admission a written answer or objection addressed to the matter. Matters deemed admitted from a failure to respond to requests for admissions can serve as a basis for a summary judgment motion. *Jasar Recycling, Inc. v. Major Max Mgmt. Corp.*, No. 4:08-cv-2830, 2010 WL 395212, at *3 (N.D. Ohio Jan. 22, 2010).

## ARGUMENT

The undisputed facts establish that Defendant (1) violated the FACE Act under 18 U.S.C. § 248; (2) desecrated Plaintiffs' property as an act of ethnic intimidation, in violation of Ohio Rev. Code §§ 2307.60(A)(1) and 2307.70(A); (3) committed common law trespass to land against Plaintiffs; and (4) intentionally inflicted emotional distress on Ms. Carver.

I.  **DEFENDANT'S FIREBOMBING OF COMMUNITY CHURCH VIOLATED 18 U.S.C. §§ 248(a)(2) AND (a)(3).Defendant Used Intentional Force to Interfere with Plaintiffs' Religious Freedoms in Violation of 18 U.S.C. § 248(a)(2).**To establish a

FACE Act violation under 18 U.S.C. § 248(a)(2), the moving party must establish that the

defendant "used or attempted to use (1) force, threat of force, or physical obstruction; (2) with the intent to; (3) injure, intimidate, or interfere with a person; (4) because that person is exercising or seeking to exercise his or her right of religious freedom at a place of religious worship." *New Beginnings Ministries v. George*, No. 2:15-cv-2781, 2018 WL 11378829, at *3 (S.D. Ohio Sept. 28, 2018). As a church, Community Church is a "place of religious worship" within the meaning of the FACE Act. *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 49, 57 (2d Cir. 2021).

Here, Defendant pled guilty to violations of the Church Arson Prevention Act. Ex. 11. In doing so, Defendant admitted under oath that he used "force or threat of force" to "intentionally" "[obstruct]" any person "in the enjoyment of that person's free exercise of religious beliefs." Ex. 10 at 17:13-24, 24:7-13; *see also* Ex. 2 at Nos. 22–23. Indeed, one would be hard-pressed to find a more quintessential example of intent to use force to interfere with a person's free exercise of religion than Defendant's firebombing of Community Church.

Defendant admits to attacking Community Church to interfere with its members' religious beliefs—namely, their inclusive and affirming views regarding the LGBTQIA+ community—explaining that his goal was to "send a message . . . that shit is not welcome here." *See* Ex. 7 and 8 at 19:00; *see also* Ex. 2 at Nos. 3–7, 25. Defendant attacked Community Church "to stop them from having this event" and "to scare them from having future events like it in the future." Ex. 1 at 130:25–131:12.

Because Defendant intentionally used force to intimidate and interfere with Plaintiffs' exercise of religious freedom, Plaintiffs are entitled to summary judgment for their claim under § 248(a)(2) of the FACE Act.

**B.     Defendant Intentionally Damaged Property of a Place of Worship in Violation of 18 U.S.C. § 248(a)(3).**Section 248(a)(3) provides an independent

basis for liability under the FACE Act, prohibiting the intentional "damag[ing] or destroy[ing] the property of a place of religious worship." 18 U.S.C. § 248(a)(3). Unlike § 248(a)(2), this provision focuses on property destruction rather than interference with individual liberties. *See United States v. Uphoff*, 232 F.3d 624, 625 (8th Cir. 2000) (affirming § 248(a)(3) conviction where defendant poured gasoline on and set fire to a Planned Parenthood clinic); *United States v. Bird*, 401 F.3d 633, 634 (5th Cir. 2005) (per curiam) (reinstating § 248(a)(3) indictment where defendant drove van through clinic entrance); *Crisis Pregnancy Servs., Inc. v. Page*, No. 23-CV-1057-LJV, 2025 WL 2793581, at *13 (W.D.N.Y. Sept. 30, 2025) (finding allegations that defendant defaced a reproductive health center's driveway with graffiti were sufficient to state a claim under § 248(a)(3)).

As discussed, Defendant, seeking to destroy Community Church, threw Molotov cocktails at the Church, damaging the Church's exterior, and broke Community Church's sign. *See* Ex. 10 at 22:11–15, 25; Ex. 12; Ex. 2 at No. 17–19; Ex. 1 at 111:20–25. Defendant's statements demonstrate his intent to damage Church property because of Plaintiffs' exercise of their religious beliefs. Specifically, during his sentencing hearing, Defendant condemned Community Church's inclusive views and justified his attack based on his disagreement with these beliefs. *See* Ex. 6 at 25:6–13. Subsequently, Defendant confirmed during his deposition that he understood—and disagreed with—the inclusive views of Community Church. Ex. 1 at 109:13–22; *see also* Ex. 2 at Nos. 3–7, 25.

As Defendant was motivated by his religious animus to firebomb Community Church, damaged the Church's property, and intended for the attack to destroy the Church, the Court should grant summary judgment for Plaintiffs under § 248(a)(3).

10

II.  **DEFENDANT'S CONDUCT VIOLATED OHIO REV. CODE §§ 2307.60(A)(1) AND 2307.70(A).Defendant's Criminal Conviction Establishes Civil Liability Under Ohio Rev. Code § 2307.60(A)(1).**Ohio Rev. Code § 2307.60(A)(1) states that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law."  Ohio Rev. Code § 2307.60(A)(1).  The Ohio Supreme Court has confirmed that this provision, "by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from *any* criminal act." *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 10 (emphasis added).

Where there is a final judgment against the defendant for a crime punishable by imprisonment in excess of one year, the defendant is "preclude[d] … from denying in the subsequent civil proceeding any fact essential to sustaining that judgment" when evidence of that conviction is introduced.  Ohio Rev. Code § 2307.60(A)(2).  While this provision does not require a criminal conviction as predicate for imposing civil liability, it nonetheless creates a rebuttable presumption for doing so.  *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 14.

Here, Defendant was criminally charged, pleaded guilty to, and was ultimately convicted of violations of 18 U.S.C. § 247(a)(2) and (d)(3), obstruction of persons in the free exercise of their religious beliefs, and 18 U.S.C. § 844(h)(1), use of fire or explosives to commit a felony. *See* Ex. 11.  Defendant's criminal conviction conclusively establishes the predicate criminal act necessary for civil liability under Ohio Rev. Code 2307.60.  Accordingly, summary judgment is warranted on Plaintiffs' statutory claims.

B.  **Defendant's Conduct Amounted to Desecration and Ethnic Intimidation Under Ohio Rev. Code § 2307.70(A).**Section 2307.70(A) provides that "[a]ny person who suffers injury or loss to person or property as a result of an act committed in violation of … 2927.11 [Desecration] or 2927.12 [Ethnic Intimidation] of the Revised Code has a civil action against the offender."  Ohio

11

Rev. Code § 2307.70(A). Section 2307.70(A) does not require Plaintiffs to demonstrate Defendants' guilt beyond a reasonable doubt or produce evidence that Defendant was found guilty of a specific predicate offense—in this case § 2927.11 or § 2927.12. *Hayes v. Heintz*, 2002-Ohio-2608, ¶ 24. Instead, Plaintiffs are only "required to prove beyond a preponderance of the evidence that the injury or loss suffered was caused by the actions of another which would be equivalent or tantamount to a violation of one of the criminal statutes listed [in § 2307.70(A)]." *Id*.

Here, Defendant's conduct clearly falls within the definition of desecration under Ohio criminal law. Desecration is defined as "defac[ing], damag[ing], pollut[ing], or otherwise physically mistreat[ing] … [a] place of worship, its furnishings, or religious artifacts or sacred texts within the place of worship or within the grounds upon which the place of worship is located." Ohio Rev. Code § 2927.11.

Defendant has admitted to firebombing Community Church. *See* Defendant FBI Interview; Pls.' RFAs, No. 18. As a result of these actions, Community Church sustained damage to the exterior doors of its property, a banner on Community Church's exterior, and a marquee sign on the property. Ex. 9 at ¶ 5; Ex. 1 at 111:20–25. Community Church incurred repair and replacement costs of over $500.00 for a new sign. *See* Ex. 12. As such, Defendant's actions amount to desecration under Ohio law, and Plaintiffs are entitled to summary judgment for their claims under Section 2307.70(A). *See State v. Hubaker*, 2008-Ohio-1776, ¶ 4 n.1 (noting that the defendant was previously convicted of desecration after setting a church on fire).

Similarly, Defendant's actions amount to ethnic intimidation. Ohio Rev. Code Section 2927.12 provides that "[n]o person shall [commit aggravated menacing, menacing, criminal

12

damaging or endangering, or criminal mischief] by reason of the race, color, religion, or national origin of another person or group of persons." Ohio Rev. Code § 2927.12(A).

Threatening a firebombing motivated by animus toward a protected class constitutes ethnic intimidation. *Hayes*, 2002-Ohio-2608, ¶¶ 22–25. In *Hayes*, an African American alleged that the defendants threatened to "fire-bomb the house" to "get the n**** out," and on a separate occasion, two men appeared at the plaintiffs' door wearing white hoods and stated, "if you're not out of here by Monday, we're going to fire-bomb the house, and burn a cross on the lawn." *Id*. ¶¶ 9–10. Ohio's Eighth District Court of Appeals held that the plaintiffs presented sufficient evidence at trial demonstrate ethnic intimidation, finding that the defendants had "on several occasions, harassed and/or menaced the appellees" and "threatened [them] with actual and/or perceived physical harm" by reason of their race. *Id*. ¶ 25.

The present case presents a stronger basis for liability. In *Hayes*, the defendants merely threatened to firebomb the plaintiffs' home, and the court nonetheless found sufficient evidence of ethnic intimidation. *Id*. Here, Defendant went beyond threats and actually threw Molotov cocktails at Community Church with the intent to burn it to the ground. Because mere threats of firebombing motivated by racial animus were sufficient to sustain a civil claim for ethnic intimidation in *Hayes*, Defendant's completed firebombing—driven by religious animus and resulting in actual property damage—merits summary judgment in Plaintiffs' favor on their ethnic intimidation claim under § 2307.70(A).

III. **DEFENDANT TRESPASSED WHEN HE ENTERED ONTO COMMUNITY CHURCH'S PROPERTY.** The undisputed material facts establish each element of Plaintiffs' trespass claim. Under Ohio law, trespass "occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue." *Accettola v. Big Sky Energy*, 2018-Ohio-5076,

13

¶ 24 (11th Dist.) (quoting *Apel v. Katz*, 83 Ohio St. 3d 11, 19 (1998)).  The plaintiff is entitled to actual damages where they prove the trespass proximately caused the claimed damages and establish their amount.  *Olive Oil, L.L.C. v. Cleveland Elec. Illuminating Co.*, 2021-Ohio-2309, ¶ 13 (8th Dist.).

Here, the facts constituting Defendant's trespass are undisputed.  Defendant admits that he intentionally entered, without permission, onto private Church property on or around March 24, 2023.  *See* Ex. 2 at Nos. 32–34.  Defendant had no authority or privilege to enter Church property; in fact, he was there only to commit a violent and hateful crime.  *See id.*; Ex. 1 at 108:20–21.

Defendant's trespass caused hundreds of dollars of damage to the Community Church property.  His Molotov cocktails scorched the exterior of the Community Church building.  Ex. 9 at ¶ 5.  He burned a banner displayed on the Community Church's exterior.  *Id.*  And he demolished a sign on Community Church property, forcing Community Church to pay over $500.00 for a replacement.  *See* Ex. 12.  This undisputed trespass and resultant damage entitles Plaintiffs to summary judgment and actual damages.  *See Accettola*, 2018-Ohio-5076, at ¶¶ 34–40 (affirming jury award for damages in civil trespass claim).

## IV.  DEFENDANT INTENTIONALLY CAUSED EMOTIONAL DISTRESS TO PLAINTIFF MEGAN CARVER BY FIREBOMBING COMMUNITY CHURCH.

An IIED claim must satisfy four elements:  "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a

nature that no reasonable man could be expected to endure it." *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34 (8th Dist. 1983) (cleaned up).

Plaintiff Carver is entitled to summary judgment against Defendant Aimenn Penny on Count VI for IIED.  The undisputed facts establish each element of the claim:  1) Defendant either knew or should have known that firebombing Community Church would result in serious emotional distress on Ms. Carver; 2) Defendant engaged in extreme and outrageous conduct by throwing two Molotov cocktails at Community Church; 3) the firebombing was the proximate cause of Ms. Carver's emotional distress; and 4) Ms. Carver has suffered emotional distress that is both severe and debilitating.

**A.**      **Defendant Penny Knew or Should Have Known that Firebombing Community Church Would Cause Ms. Carver Severe Emotional Distress.** An actor possesses the requisite intent to inflict emotional distress where he either knows "that severe emotional distress 'is certain, or substantially certain, to result from his conduct'" or deliberately disregards "a high degree of probability that emotional distress will follow." *Tschantz v. Ferguson*, 97 Ohio App. 3d 693, 713 (8th Dist. 1994).  Consequently, "[t]he outrageousness of a defendant's conduct in and of itself can demonstrate his intent to cause emotional distress." *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App. 3d 82, 93 (1st Dist. 1999).

The outrageousness of Defendant's conduct—bombing a place of worship—per se demonstrates his intent to cause emotional distress.  Even if the outrageousness alone was insufficient to demonstrate Defendant's intent, Defendant also *knew* that bombing Community Church would result in severe emotional distress on its members.  *See* Ex. 2 at No. 28 ("Admit … You intended to cause serious emotional distress to Plaintiffs by obstructing members and attendees of Community Church's enjoyment of their free exercise of religious beliefs.").  In fact,

15

Defendant firebombed Community Church with the specific intent to stop the scheduled drag story hour and "scare" Community Church from hosting similar events in the future.  Ex. 1 at 130:25–131:12.  Even if Defendant did not intend to cause Ms. Carver serious emotional distress, his conduct nonetheless satisfies the intent element because he acted, at minimum, with reckless disregard for the high degree of probability that his attack on Community Church would cause its congregants serious emotional distress.

**B.     Throwing Molotov Cocktails at a Church Constitutes Extreme and Outrageous Conduct.**

Extreme and outrageous conduct requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Reamsnyder v. Jaskolski*, 10 Ohio St. 3d 150, 153 (1984) (quoting *Yeager v. Loc. Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 375 (1983)).  To determine if conduct meets this threshold, courts consider whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  *Reamsnyder*, 10 Ohio St. 3d at 153.

On March 25, 2023, Defendant lit and threw homemade Molotov cocktails at Community Church, intending to burn the building to the ground.  Ex. 9 at ¶ 5; Ex. 10 at 22:11–15, 25. Defendant himself does not contest that his "conduct of throwing incendiary devices at Community Church Property and breaking a church sign was extreme and outrageous."  Ex. 2 at No. 29.

Courts elsewhere have held that similar conduct is extreme and outrageous.  *See Stirgus v. Benoit,* No. 89 C 1276, 1990 WL 251790 at *4, 11 (N.D. Ill. Dec. 26, 1990) (holding that "firebombing [Plaintiff's] home" was "clearly" extreme and outrageous); *Mwila v. Islamic Republic of Iran*, 33 F. Supp. 3d 36, 40 (D.D.C. 2014) (citing *Valore v. Islamic Republic of Iran*,

700 F. Supp. 2d 52, 77 (D.D.C. 2010)) ("acts of terrorism 'by their very definition' amount to extreme and outrageous conduct and are thus compensable by analogy under the tort of 'intentional infliction of emotional distress'"); *Honaker v. Smith*, 256 F.3d 477, 492–93 (7th Cir. 2001) ("intentionally causing a person's house to be set on fire in an effort to force him to leave town" constitutes "extreme and outrageous conduct"); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 81 (Tex. App. 1998) (finding that bomb and death threats constituted extreme and outrageous behavior that could give rise to intentional infliction of emotional distress claim).

### C. The Firebombing Proximately Caused Ms. Carver's Mental Anguish.

To sustain a claim for intentional infliction of emotional distress, a plaintiff must establish a "'substantial causal relationship'" between the defendant's extreme and outrageous conduct and plaintiff's resulting emotional distress. *Clay v. Shriver Allison Courtley Co.*, 2018-Ohio-3371, ¶ 59 (7th Dist.) (citing *Ryan v. Connor*, 28 Ohio St. 3d 406, 410 (1986)); *see also Phung v. Waste Mgt., Inc.*, 71 Ohio St. 3d 408, 411 (1994) (to satisfy the proximate cause element, plaintiff must "present evidence" that defendant "caused or exacerbated" plaintiff's mental distress).

Defendant himself does not contest that the firebombing proximately caused Carver severe emotional injury.  Ex. 1 at 130:15–19 ("You don't dispute that you caused emotional damage to the members of the church, caused them fear, right?" "To the point that they describe, yes."); Ex. 2 at Nos. 26–27, 30. ███████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████  Ex. 13 at CARVER_000529,000536.

### D. Ms. Carver's Panic Symptoms and Physical Manifestations of Stress Constitute Severe and Debilitating Emotional Distress.

17

"[C]ompensable emotional injuries are those that are severe and debilitating to a reasonable person." *Meyers*, 131 Ohio App. 3d at 94 (citing *Binns v. Fredendall*, 32 Ohio St. 3d 244, 246 (1987)). Accordingly, the claimed injury must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983).

The inquiry into the severity of the emotional distress proceeds in two stages. First, the court must determine as a matter of law whether the plaintiff has presented proof of emotional distress beyond "trifling, mere upset, or hurt feelings." *Meyers*, 131 Ohio App. 3d at 94 (internal citations omitted). If such proof exists, the factual inquiry turns to whether the emotional distress suffered rose to the "level of serious or debilitating emotional distress." *Id.*; *Peterson v. Ruppright*, 452 F. Supp. 3d 735, 743 (N.D. Ohio 2020) (finding emotional distress sufficiently severe where plaintiff asserted she was diagnosed with PTSD, anxiety, and depression and pointed to her medical records, which documented ongoing mental trauma).

Defendant himself does not contest that Ms. Carver "suffered serious mental anguish of a nature no reasonable person could be expected to endure." Ex. 2 at No. 31. ██████

███████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. 13 at CARVER_000529–000558. Emotional anguish requiring professional intervention to manage exceeds mere upset or hurt feelings and rises to the level of distress at which a reasonable person would be unable to cope. *Cf. Cruz v. Eng. Nanny & Governess Sch. Inc.*, 2017-Ohio-4176, ¶ 54 (8th Dist.) ("The relevant case law surrounding the tort of [IIED] seems to focus on whether the plaintiff sought medical or psychological treatment for the alleged emotional distress."); *Nayyar v. Mount Carmel Health Sys.*, No. 2:10-CV-00135, 2013 WL 2418072, at *9 (S.D. Ohio June 3,

18

2013) (noting that evidence that Plaintiff "has sought treatment for any emotional distress … would help Plaintiff's claim satisfy the third and fourth elements of IIED"); *Risch v. Friendly's Ice Cream Corp.*, 136 Ohio App. 3d 109, 115 (1st Dist. 1999) (denying Plaintiff's IIED claim where "[t]here were no allegations that [Plaintiff] was forced to seek medical or psychiatric treatment or that she was unable to function in her daily life").

Moreover, Ms. Carver's injuries rise to the level of serious or debilitating emotional distress. *See Paugh*, 6 Ohio St. 3d at 78 (noting that "[a] non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia"). ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████  ████

████████████████████████████████████████

██████████████████████  *Id.* at CARVER_000529.

## CONCLUSION

As set forth above, Defendant Penny (1) violated the FACE Act under 18 U.S.C. § 248; (2) desecrated Plaintiffs' property as an act of ethnic intimidation, in violation of Ohio Rev. Code §§ 2307.60(A)(1) and 2307.70(A); (3) committed common law trespass to land against Plaintiffs; and (4) intentionally inflicted emotional distress on Ms. Carver.  Plaintiffs respectfully request that the Court grant Plaintiffs' motion for partial summary judgment on these claims.

19

Dated:  May 26, 2026

Respectfully Submitted,

*/s/ Justin E. Herdman*

Justin E. Herdman (OH #80418)
Michael S. Quinlan (OH #88386)
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Tel: (216) 586-3939
Fax: (216) 579-0212
jherdman@jonesday.com
msquinlan@jonesday.com

/s/ *James Pasch*

James Pasch (OH #0086809)
Anti-Defamation League
605 Third Avenue
New York, NY 10158-3650
Tel: 212-885-5806
Email: jpasch@adl.org

*Attorneys for Plaintiffs Community Church of Chesterland Ohio, Megan Carver, and Constance Becker*

20

## CERTIFICATE OF COMPLIANCE

I hereby certify that this case has been assigned to the standard track and the foregoing

Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment complies

with the page limitations set forth in LR 7.1(f).

/s/ Justin E. Herdman
Justin E. Herdman (OH #80418)

*Attorneys for Plaintiffs Community Church of Chesterland Ohio, Megan Carver, and Constance Becker*

21

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 26, 2026, a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment was filed with the Clerk of the Court via the CM/ECF system, which will send notification to all counsel of record. Further, a copy of the foregoing was sent via USPS First Class Mail to the following:

Aimenn D. Penny (#51942-510)
FCI McDowell
Federal Correctional Institution
P.O. Box 1009
Welch, WV 24801

/s/ *Justin E. Herdman*
Justin E. Herdman (OH #80418)

*Attorneys for Plaintiffs Community Church of Chesterland Ohio, Megan Carver, and Constance Becker*

22